———o———

WILLIAM POLSTON, Respondent, vs. MICHAEL SEE, Appellant.

1. *Practice, civil—Slander—Trials—General verdict—Several counts.*—In an action for slander, the petition containing several counts, a general verdict is proper, when the several counts contain the same slander uttered at different times.

2. *Practice, civil—Trials—Evidence—Slander—Condition in life.*—The condition in life of the parties to a slander suit, is a proper subject of inquiry on the question of damages.

3. *Practice, civil—Trials—Slander—Evidence—Statements— Res gestæ.*— In an action of slander for charging plaintiff with stealing defendant's lumber, the declarations and acts of the plaintiff at the time of his taking the lumber are admissible in evidence, though the defendant was not present, as a part of the *res gestæ.*

4. *Practice, civil—Trials—Verdict—Slander—Crime—Plea of justification—What evidence required.*—In a slander suit for charging the plaintiff with the commission of a crime, wherein the defendant justifies the charge, the verdict must be for the plaintiff, if the jury have a reasonable doubt of the plaintiff's guilt.

Per SHERWOOD, Judge, dissenting.

1. *Practice, civil—Trials—Slander—Justification—Verdict—Preponderance of evidence.*—In an action of slander, when the answer justifies the language, the verdict should be in accordance with the preponderance of the testimony, as in other civil causes.

2. *Practice, civil—Trials—Instructions—Slander.*— In an action of slander for charging the plaintiff with theft, an instruction to the jury to find for the defendant, if they find that the plaintiff, in person, or by agent, took away the property, is wrong, because it omits the essential ingredient of felonious intent.

3. *Practice, civil—Trials—Instructions—Confusing —Re-trial.*— When the instructions given on a trial must have confused and misled the jury, a new trial should be granted.

*Appeal from Audrain Circuit Court.*

*Sanders & Carkener,* for Appellant

I. The plaintiff was permitted to detail conversations between himself and one, Johnson, who was in no way a party to the record. The defendant not being present at such conversations, they were hearsay evidence, and inadmissible.

II. The instruction, requiring proof of plaintiff's guilt beyond a reasonable doubt, was erroneous. (Kincade vs. Bradshaw, 3 Hawks, 63; 9 N. H., 150; 25 N. H., 114; Ellis vs· Buzzell, Am. Law R. [July 1873], and notes.) In this State an express ruling on this point in a slander suit has never been made; but this point is fully settled in Marshall vs. Thames Ins. Co., 43 Mo., 586. Slander being here essentially a civil action,. and the plaintiff therefore being allowed to testify and to rebut the plea of justification (a thing not true where the other rule obtains), there can be no good reason given why a greater degree of evidence should be required than in any other civil suit.

III. Though evidence of defendant's wealth is admissible, as a means of estimating punitory damages, evidence of plaintiff's poverty is not admissible, since it can throw no light on that matter.

*Powell & Hughes,* for Respondent.

I. When a special plea of justification is set up by the defendant in an action of slander, the same evidence must be adduced as would be necessary to convict the plaintiff upon an indictment for the crime imputed to him. (2 Greenl. Evid., § 426, and cases cited.)

II. The pecuniary conditions of plaintiff and defendant are

proper matters to be considered by the jury in estimating the damages in a case of slander. (Buckley vs. Knapp, 48 Mo., 152, and cases cited.)

*Forrist & Ladd*, with whom was *T. J. Powell*, for Respondent.

I. In an action of slander, proof may be given of the condition in life of the respective parties to the action, as affecting the question of damages. (Buckley vs. Knapp, 48 Mo., 152; Larned vs. Buffinton, 3 Mass., 546; Townsh. Libel and Sl., § 390; Tillotson vs. Cheetham, 3 Johns., 56; Bodwell vs. Swan, 3 Pick., 376; Smith vs. Lovelace, 1 Duvall [Ky.], 215; Justice vs. Kirlin, 17 Ind., 588.)

II. The time, place and circumstances of taking property, alleged to be stolen, may be shown by either party as bearing upon the question of intention. The animus of the taking, whether felonious or otherwise; and words spoken while the property is being taken, are but verbal acts—part of the *res gestæ*, and are also competent. (1 Greenl. Evid., § 108, *et seq.;* Beardslee vs. Richardson, 11 Wend., 25; Lund vs. Tyngsborough, 9 Cush., 36; 3 Greenl. Evid., § 157.)

III. To sustain a plea of justification, alleging the plaintiff guilty of larceny, the same strictness of proof is required, as would be required to convict him of larceny, if indicted therefor. (Bradley vs. Kennedy, 2 G. Green, [Ia.] 231; Wonderly vs. Nokes, 8 Blackf., § 589; Woodbeck vs. Keller, 6 Cow., 118; Darling vs. Banks, 14 Ill., 46; Sperry vs. Wilcox, 1 Met., 267; Comm. vs. Snelling, 15 Pick., 321; Forshee vs. Abrams, 2 Ia., 571; Wilmett vs. Harmer, 8 Car. & P., 695.)

IV. The *gravamen* of the action was that defendant had accused plaintiff of the crime of larceny, as connected with a single transaction, although the words are said in somewhat different collocations; practically then, there is but one count in the petition. If so, then the general verdict was right, and the judgment rendered legal. (Bradley vs. Kennedy, 2 G. Green, [Ia.] 231; Clemens vs. Rollins, 14 Mo., 604; Brownell vs. Pac. R. R. Co., 47 Mo., 239; Brady vs. Connelly, 52 Mo., 19.)

ADAMS, Judge, delivered the opinion of the court.

This was an action for slanderous words, charged to have been spoken by the defendant of the plaintiff, and thereby imputing to him the crime of larceny in stealing lumber belonging to the defendant.

The slanderous words were set out in three several counts of the petition, which concluded with a prayer for damages to the amount of $5,000.

The answer denied the speaking of the words as charged in the first and second counts, and justified as to the last count, on the ground that the words were true, and that the plaintiff had been guilty of the larceny as charged.

There were several mis-trials, but the case finally resulted in a verdict and judgment for the plaintiff for $500. The verdict was a general one, finding all the issues in favor of the plaintiff, and assessing a single sum of five hundred dollars for his damages.

Each party gave evidence tending to prove the issues on their respective sides. The plaintiff was allowed to prove his own condition in life and also that of the defendant, as bearing upon the question of damages, and an instruction was also given on this point in favor of the plaintiff. During the progress of the trial the plaintiff was introduced as a witness, and was allowed to testify in regard to what had been done and said by him in removing some lumber from the defendant's mill when the defendant was not present.

After the close of the evidence, various instructions were asked and given for the plaintiff, only one of which need be referred to, as there is no point made on the others. The instruction complained of was to the effect, that under the defendant's plea of justification, the same amount of proof was necessary to convict the plaintiff as if he was on trial for the crime, and that if the jury entertained a reasonable doubt of his guilt they must find for the plaintiff; that any such doubt, however, to be available, must be a rational doubt, growing out of the evidence in the case and consistent with it, and not a mere hypothesis or possibility of innocence.

1. The objection, that there was not a finding and assessment of damages on each count of this petition, is not tenable. The words charged in each count had reference to the same crime, and might have been set forth in a single count. It was the same slander, uttered at different times, and it was proper to assess one amount of damages for the entire slander, though imputed at several times.

2. The plaintiff's condition in life, as well as that of the defendant, are proper subjects of inquiry in slander cases on the question of damages. Slander, uttered by a man of great influence in society, would certainly be more injurious than if spoken by a party of no consequence at all.

3. The testimony, which the plaintiff was allowed to give in regard to what was done and said when he took the lumber, was a part of the *res gestæ*, and was properly admitted. The words spoken by him in the absence of the defendant were verbal acts, and as such admissible as a part of the transaction.

4. The main point discussed here grows out of the instruction by which the jury were told, that if they had a reasonable doubt of the plaintiff's guilt under the plea of justification, they must find the issues for him.

I am not aware, that this question has ever been directly passed on by this court. So far as I know, the legal profession throughout the State have acted on the presumption that it was the settled law. It seems to have been so considered at the Circuits, and it is now for the first time mooted in this court.

It has the support of the English authorities, and, I presume, of the majority of the American courts. The reason of the rule is, that a verdict of a jury on the question of guilt or innocence has at least the same moral force as a verdict in a criminal trial for the same offense. There seems to be no other civil case where a verdict has the same moral force. If this had been a suit for trespass against the plaintiff for the taking and conversion of the defendant's lumber, the simple fact of trespass, without regard to the intention, would have

been sufficient to warrant a verdict. The *animus furandi* might have been totally wanting, and yet the plaintiff be guilty in the law of trespass. Here, as in a trial for the crime of larceny, the *animus* is the main point before the jury, and the force of the verdict of guilty is looked upon as the same. A party found guilty on a plea of justification, though not liable to the consequences or punishment attached to the same result in a criminal case, is covered by the same moral turpitude, and in the eyes of the community is pointed at by the finger of scorn as equally odious. In actions on policies of insurance, where the defense is that the defendant burnt his own house, it has been held that a mere preponderance of evidence is sufficient to establish the defense. The distinction is, that this is a good defense under the policy, no matter what the intent of the defendant was in burning his house. By doing so, he violated the express terms of the policy, and could not take advantage of his own wrong. Our statute makes it arson for a party to burn his own property in order to recover insurance on the building. The question, whether he burnt it for one purpose or another, is wholly immaterial in an action on the policy. If he voluntarily burnt it at all, he will not be allowed to recover, as, by doing so, he violated the policy itself. The plea of justification in slander is unlike any other civil case, and for this reason it has been treated as an exception to the general rule in regard to the preponderance of the testimony and the amount necessary to a conviction. This court has no power to make or repeal laws, we must decide the law as we find it to exist. If a change in this rule be desired, the legislature must be looked to, and not the courts, to make it.

Let the judgment be affirmed. The other judges concur, except judge Sherwood, who dissents.

Dissenting opinion of Judge SHERWOOD.

Polston brought this suit in the Audrain Circuit Court against See, for certain slanderous words, alleged to have been spoken and published by the defendant, charging the plaintiff with the crime of theft.

The answer of the defendant denied the speaking of the words set forth in the first and second counts of the petition, but admitted uttering the words specified in the third count, and said that they were true, and that plaintiff did steal, take and carry away a large quantity of defendant's plank and lumber.

The cause was tried before a jury, and the evidence was conflicting. At the conclusion of the testimony the court gave nine instructions for the plaintiff, and six for the defendant. Among those on behalf of the plaintiff, was one couched in these words:

"The jury are instructed that to support the special plea of justification set up by the defendant in this case, to-wit: that the plaintiff did steal, take and carry away defendant's lumber, the same evidence must be adduced as would be necessary to convict the plaintiff upon an indictment for the crime imputed to him; and if the jury entertain a reasonable doubt of the plaintiff's guilt of the crime charged against him by the defendant, the jury should find a verdict for the plaintiff, and assess his damages at such sum as they may deem him entitled to under all the circumstances, not to exceed the sum of five thousand dollars. Any such doubt however, to be available to plaintiff, must be a rational doubt, growing out of the evidence in the case, and consistent with it, and not a mere hypothesis or possibility of innocence."

This instruction was objected to by defendant, and the propriety of giving it will therefore now be discussed.

Mr. Greenleaf, in his work on Evidence, lays down the rule in this way:

"To support a special plea of *justification*, where *crime* is imputed, the same evidence must be adduced as would be necessary to convict the plaintiff upon an indictment for the crime imputed to him; and it is conceived, that he would be entitled to the benefit of any reasonable doubts of his guilt in the minds of the jury, in the same manner as in a criminal trial." (2 Greenlf. Evid., § 426.)

But of the authorities cited in the margin in support of

the text, some of them either contravene the doctrine altogether, or yield it but a doubtful and indifferent support. And the English cases, which uphold it, do so on grounds which are purely *local*, and applicable in that country alone where the adjudications were made.

The *reason*, which gave origin to the rule in England was this :

If upon the trial of the plea of justification (which imputed the commission of a felony) the issue was found for the defendant, the plaintiff was thereupon held to answer the felony without any further accusation ; the *verdict* being held equivalent to an *indictment*, and the intervention of a grand jury unnecessary. (Cook vs. Field, 3 Esp., 133 ; 2 Curw., Hawk., 291 ; 2 Hale 150 ; 1 Chit. C. L., 135 and 164.) So that *penal* consequences to the plaintiff ensued upon a finding under such circumstances for the defendant, and the rigidity of the rule we are considering was but a part and parcel of that tenderness and benignity, which the law has ever extended towards him whose life or liberty is imperiled.

And to such an extent in England was the doctrine carried, where the verdict in a civil case disclosed the commission of a felony, that it was not confined to actions for libel and slander alone, but parties were frequently sent over to the criminal side of the assizes to take their trial for felonies as the result of verdicts in other civil actions. (Prosser vs. Rowe, 2 C. & P., 421, and note 6.) But as in this country no such results attend the verdict of a jury in any civil case, it would seem evident that the rule, as well as the reason on which it is founded, should cease together in accordance with the maxim *"Cessante ratione legis cessat ipsa lex."*

And in those States of our Union, where the English rule has been followed, it is thought to have resulted from the inadvertent adoption of proceedings, which have no applicability to our, in many respects, widely different system of jurisprudence.

In Iowa the rule obtaines, and the later decisions in that

State are placed upon the ground, that the question is no longer *res integra*, that it has prevailed for many years, and the Legislature has not seen fit to interfere. But there, as above seen, the point has been the subject of repeated adjudications by the Supreme Court of that State. So also in Indiana the rule prevails in all its broadness; and no doubt for like reasons as cited above. (Tull vs David, 27 Ind., 377.) However in the earliest decisions in that State, where the question arose, nothing is said touching the doctrine of reasonable doubt as applicable to such cases, but only that "to support his plea he (the defendant) was bound to show, that the plaintiff had sworn falsely on the trial to a matter material to the issue." (McGlemery vs. Keller, 3 Blackf., 488.) And in Offatt vs. Earlywine, 4 Blackf., 460, the court, while holding the *same kind* of evidence was necessary on the part of the defendant who justifies, declined to say, whether the same *strength* of testimony was requisite or indispensable to the maintenance of the defendant's plea.

In the subsequent cases in that State, the broad doctrine, as enunciated in Tull vs. David, *supra*, has been sanctioned. And this is true of many other States. But it is conceived that, wherever this doctrine has received the sanction of the courts of this country, two elements will be found in the error which conduced to such result:

First, that, already alluded to, of blindly following English precedents, oblivious of the reasons which gave them origin: Second, that of confounding together, and regarding as *identical*, the *same kind* with the *same degree* of proof.

Where the alleged slanderous charge imputes the crime of perjury, there the oath said to be falsely taken must be rebutted, or neutralized, by the testimony of one witness. The case then stands oath against oath; then the *equipoise*, thus created in the evidence, is, in order to sustain the plea of justification, to be overcome by the testimony of one witness, or by corroborative circumstances. And this is all that many of the authorities intend, when employing language of a much stronger and more comprehensive signification.

The same view, as here expressed on this subject, is evidently taken also in Hopkins vs. Smith, 3 Barb. [S. C.], 599, in commenting upon what is meant in Woodbeck vs. Keller, 6 Cow., 118, where it is said, "that where the defendant justifies a charge of perjury, the evidence must be the same as required to convict a defendant on an indictment for perjury;" and, in construing the language employed by the court in Clark vs. Dibble, (16 Wend., 601), "that the evidence must be sufficient to convict" &c., for the court in Hopkins vs. Smith, *supra*, after making the quotations just cited, say: "In other words the defendant must prove all the particulars which constitute the offense of perjury."

During the prevalence of the former practice in chancery the answer of the defendant, being under oath, had to be disproved by two witnesses, or by one witness and corroborating circumstances, and yet no one ever had the temerity to contend, that the mind of the chancellor, before entering a decree, had to be satisfied of the truth of the allegations of the bill beyond a reasonable doubt.

Under the operation of the English rule in those States, where it has been adopted, A. may sue B. for the crime of burning his house, and may recover upon testimony which is sufficient in other civil cases. But if A. is so unguarded as to state, that B. did such criminal act, and B. sues him, he will be mulcted in damages, if not able to establish beyond "a reasonable doubt," that B. had committed the crime of *arson*.

Surely such *chameleon-like* changes in the rules of evidence, where the same facts are involved, do not comport with the dignity of the law as a science, nor with the proper administration of justice. Our natural sense of right revolts at such *purely artificial* and *palpably unjust* distinctions.

The point now being considered is of *first impression* in this State, and it is therefore important that it be settled on a correct basis, and in strict accordance with the analogies of the law and practice in *other* civil actions.

A question, nearly akin however to the one under discussion, was passed upon by this court in Marshall vs. Thames.

Fire Ins. Co., 43 Mo., 586, an action on a policy of insurance, and the defense was, that the plaintiff had *burned* the property insured ; after stating what the rule is in *criminal* cases, it is said : "In all civil cases it is the duty of the jury to decide in favor of the party on whose side the weight of evidence preponderates and according to the reasonable probability of the truth." And manifestly there can be no reason founded in *principle*, why a greater amount or degree of evidence should be required in an action of *slander, where arson* is the charge, and the truth of that charge constitutes the justification, than in an action on a *policy* of *insurance*, where the truth of a *like* charge is plead as a defense to a suit on the policy.

Although the views here enunciated are in opposition to the rule as laid down by respectable and able authorities in many, if not in a majority, of our sister States, yet these views are, as I think has been plainly shown, supported by sound reasoning, and are besides upheld by courts of unquestioned ability in the States of Maine, New Hampshire North Carolina, Louisiana and Alabama. (Ellis vs. Buzzell, Am. Law, Reg. [July 1873] 426 ; Matthews vs. Huntly, 9 N. H., 146 ; Folsom vs. Braun, 25 *Id.*, 114 ; Kincade vs. Bradshaw, 3 Hawks., 63 ; Hoffman vs. Western M. & F. Ins. Co., 1 La. An., 216 ; Hopper vs. Ashley, 15 Ala., 457 ; Spruil vs. Cooper, 16 *Id.*, 791.)

Viewing this matter as above indicated, the giving of the instruction complained of constitutes a good ground for reversal of the judgment recovered by the plaintiff. In addition to this, the court, on the part of the defendant, gave an instruction to the effect, that, if plaintiff, either in person or by his agent, *took and carried away* the lumber of defendant, knowing it to be defendant's, without the consent of defendant, the jury should find for the defendant.

This instruction utterly ignores and omits the essential ingredient of a *felonious intent*, without which there could be no larceny.

By no possible stretch of ingenuity can these instructions be made to harmonize. They are in direct and irreconcilable conflict, and neither one asserts the law. (43 Mo., 586.)

The jury is told to find a verdict for the plaintiff, unless the evidence establishes his guilt beyond a reasonable doubt, and for the defendant, if the plaintiff "took and carried away" his property. These instructions could have had no other effect than to confuse and mislead the jury; to make their verdict mere *guess work*.

The above are grounds very satisfactory to myself at least, why this cause should be re-tried; but my associates, with whom I do not concur as to the chief question involved in this case, while they do not controvert the correctness of my reasoning, state, in behalf of the conclusion which they have reached, that the plea of justification in actions of slander is an exception to the general rule; and I am told that: "The reason of the rule" (in such actions) "is, that a verdict of a jury on the question of guilt or innocence has at least the same moral force as a verdict in a criminal trial for the same offense," and that "there seems to be no other civil case where a verdict has the same moral force." But this is altogether an erroneous idea, as I will now proceed to show.

In an action for *Crim. Con.* the verdict, if for the plaintiff, would set the seal of an indelible stigma on the character of her, concerning whom the action was brought, as effectually as if the parties engaged in the criminal act were found guilty thereof upon an indictment charging such criminality, and consequently a verdict for the husband, in the civil suit I have instanced, would be as heavily freighted with "*moral force*," as would the verdict for the defendant, which upholds the plea of justification, in an action for slander.

So also, in an action on a policy of insurance, a verdict, which in effect brands the plaintiff therein with the crime of arson, would carry with it an amount of "*moral force*" not inferior in degree to that borne by a verdict, which establishes the truth of the alleged slanderous words, in a suit for defamation of character.

The above illustrations are only a few out of a great number, which might be employed to show the utter fallacy of the argument based on "*moral force*."

It is by no means of infrequent occurrence, that verdicts in numerous civil actions practically establish that a party to the action is guilty of some highly criminal offense, and yet this fact is not allowed to change or overturn the rules of evidence, nor to compel an increase in the amount of testimony offered to support any given issue.

Mr. Greenleaf, in his work on Evidence, lays down just the *same rule* in actions on policies of insurance, where the charge is that the plaintiff burnt his own property, as he does in actions of slander where the defendant justifies by pleading the truth of the alleged slanderous words. (2 Glf. Ev., § 408.)

And the learned author cites *"English Authorities"* in support of his text. But these authorities are not held for law in many of the American States, nor in this State as already shown in Marshall vs. Thames Fire Ins. Co., *supra,* where this court repudiates the English doctrine, and asserts the sufficiency of a preponderance of evidence in such cases to establish the defense that *arson* had been committed on the property insured. For Judge Wagner, in commenting on the issues raised by the pleading, expressly says:

" The defendant in its answer * * * * * averred as matter of defense, that the burning of the Steamboat Magnolia * * * * * was occasioned, caused and brought about, by the direct agency, procurement, contrivance and directions of Marshal and Kilpatrick, the plaintiffs. *The whole defense was distinctly staked upon that issue."*

But it is said that "in actions on policies of insurance, where the offense is, that the plaintiff burnt his own house, it has been held, that a mere preponderance of evidence is sufficient to establish the defense. The distinction is that this is a good defense under the policy, no matter what the intent of the plaintiff was in burning his house."

This attempted distinction is however by no means satisfactory ; because it would be impossible to directly charge the plaintiff with burning his own property without imputing to him the commission of a felony, and without, if the verdict sustained the charge, effectually stamping the disgrace

ɔf such felony upon him. Another basis suggested, rather than offered, to sustain the opinion of the court is that, so far as the court is informed, the legal profession throughout the State have acted upon the presumption that it (the rule referred to) was the settled law.

Heretofore, it had been supposed, that it belonged exclusively to *this tribunal* to determine what the law, settled or otherwise,was, and that, in so declaring the law, it would not be engaged in any extra judicial or legislative act.

Aside from decisions, which by being acted upon for a series of years have thereby become rules of property, when a point is presented for the *first time* to a court of last resort, it should be the highest aim of modern adjudication to follow *principle* always, in preference to, and rather than, *mere precedent ;* to subject decisions of other courts, or the *dicta* of text writers, to the crucial test of a skeptical and remorseless analysis, and to unhesitatingly reject them, if found wanting in that life of the law, sound reason.

For, as Sir William Jones so eloquently observes: "If law be a science, and really deserve so sublime a name, it must be founded on principle, and claim an exalted rank in the empire of reason."