McFARLAND, *Appellant*, v. LaForce.

Division One, February, 5, 1894.

Resulting Trust: PAROL EVIDENCE.    Parol evidence, in order to establish a resulting trust, must be clear, strong and unequivocal and so definite and positive as to leave no room for doubt in the mind of the chancellor as to the existence of the trust.

*Appeal from Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Wm. Thompson* for appellant.

A title procured by fraud or plain and positive deception is utterly void in law, as well as in equity, and where influence, such as exists between man and wife, is used and advantage taken of that relation to

McFarland v. LaForce.

acquire property, it is a fraud destitute of all validity and utterly void. And equity will not stop short with the guilty party, but will grant relief against every one who attempts to sustain the wrong or profit by it. *Turner v. Turner,* 44 Mo. 335, and cases therein cited; *Freeland v. Eldridge,* 19 Mo. 325; 40 Mo. 114. A quitclaim deed is notice of a defective title and where the defendant purchases of one who has improperly and fraudulently obtained the title to land, with full knowledge of the fraudulent schemes to obtain such title and takes only a quitclaim deed he can not hold the land. *Stoffel v. Schroeder,* 62 Mo. 147; *Ridgeway v. Holliday,* 59 Mo. 444; *Austin v. Loring,* 63 Mo. 19. A purchaser of land with notice of the equities of a prior purchaser takes the land subject to such equities. *Gibson v. Lair,* 37 Mo. 188, and cases therein cited. If a purchaser has such notice as would put a man of ordinary prudence on inquiry, he is affected with notice; if he purchases land clothed with a trust he takes subject to such trust. *Fellows v. Wise,* 55 Mo. 413; *Roberts v. Moseley,* 64 Mo. 507. Plaintiff took possession in 1869 under claim of title, and was put off in 1882, under execution against her husband. She had a title by limitation, as effective as though acquired by deed. Open, notorious, continuous and adverse possession, for ten years, gives a title by limitation, equivalent to a deed. *Blair v. Smith,* 16 Mo. 273; *Nelson v. Brodback,* 44 Mo. 596; *Wall v. Shaidler,* 47 Mo. 282, and cases cited.

*J. H. Flannigan* and *Silver & Brown* for respondent.

(1) The credibility of the witnesses in a suit can best be determined by the chancellor, who has the advantage of having them before him. *Cox v. Cox,* 91

Mo. 71; *Sharpe v. McPike*, 62 Mo. 300; *Boyle v. Jones*, 78 Mo. 403; *Snell v. Harrison*, 83 Mo. 651; *Rawlins v. Rawlins*, 102 Mo. 563. The plaintiff on her part testified that she furnished the money to pay for the land, while her husband testified that he furnished it. (2) Besides, the presumption is that the money was the husband's; this is even true to the extent that it will be presumed that property acquired by the wife during coverture, was paid for with the means of her husband. *Sloan v. Terry*, 78 Mo. 625; *Crook v. Tull*, 111 Mo. 290. (3) Again, a court of equity will not aid or enforce an agreement made in fraud of creditors. *Taylor v. Von Schrader*, 111 Mo. 206; *Medaker v. Bonebrake*, 108 U. S. 66; 1 Beach's Equity, sec. 183. The evidence shows the deeds were made to Hardin with plaintiff's consent, and that it was made to cover up the land and to protect it from McFarland's creditors. (4) Plaintiff is estopped by her lachés, if the money she claims to have paid for the land was her separate estate as charged in her petition. *Rannels v. Gerner*, 80 Mo. 483. She is bound by the statements made in her pleading that the money was her separate estate. *Knoop v. Kelsey*, 102 Mo. 291; *Ramsey v. Henderson*, 91 Mo. 560; *Lenox v. Harrison*, 88 Mo. 491. Laches affords a good defense to a stale claim like the one here presented. *Burgess v. Railroad*, 99 Mo. 496; *Mathias v. O'Neill*, 94 Mo. 520. Such defense of laches may be applied within the time fixed by the statute of limitations. *Burgess v. Railroad*, 99 Mo. 496; *Kline v. Vogel*, 90 Mo. 239. The evidence was not sufficient to support a finding for plaintiff. 6 Am. and Eng. Encyclopedia of Law, p. 64; *Buchanan v. Sahlein*, 9 Mo. App. 552; *Baker v. Morton*, 12 Wall. 150.

BRACE, J.—This action was commenced in the circuit court of Jasper county, taken thence on appli-

cation of plaintiff by change of venue to the circuit court of Greene county, where it was tried upon issues raised by a second amended petition filed by the plaintiff and the answer of the defendant thereto, which was a general denial. The finding and judgment was for the defendant, the plaintiff's bill dismissed, and she appeals.

It appears that the defendant is in the possession of and holds the legal title to the west half of section 18, township 30, range 30, situate in said county of Jasper containing 320 acres of land, which he purchased of one James McFarland and of which he was put in possession under a decree of court in 1882, paying therefor the sum of $6,500 in money, other land and notes, and receiving deeds from other parties in whom the legal title seems to have been vested. That the plaintiff and the said James McFarland were married on the nineteenth of March, 1861, and were divorced in the year 1887.

This proceeding is in the nature of a bill in equity to declare the defendant a trustee of the legal title of said real estate for her benefit, on the ground that at divers times during the existence of the marital relation she furnished her husband sundry amounts of money which was her separate estate, to pay part of the purchase money for buying outstanding title to and removing incumbrances from said real estate, amounting in all to the sum of about $2,000 upon an agreement with him that the same should be conveyed to her as her separate estate in fee simple, but which her said husband, fraudulently confederating with one James F. Hardin to cheat her out of her said estate, failed to do, but caused the deeds to said real estate to be made to the said Hardin and his wife from whom it is to be inferred the defendant through other subsequent conveyances made and con-

trived by her husband, as she alleges for the same purpose, finally derived title. She seeks to charge the defendant on the ground that when he purchased he had notice of her equities in the land.

The plaintiff testifies that this land was purchased by her husband before the marriage for $1,800, of which he had paid $800; that he had received a deed for forty acres of it and held a title bond for the remainder; that she furnished him these moneys between the years 1867 and 1869, and that they were applied by him in payment of the purchase money remaining unpaid and in buying in outstanding titles and removing incumbrances from the land. That at the time she commenced furnishing these moneys she had about $3,000; that $1,600 dollars of it she had saved before marriage from her wages as a dress maker, sewing at houses by the day in St. Louis; that when she was married she was twenty-four or twenty-five years old and had been dress making fourteen or fifteen years. That afterwards in 1864 she received a present of $1,000 from a friend or friends in St. Louis, and that she made the remainder honestly; that she kept this money with her mother in Manchester, St. Louis county, until 1867, when she brought it home and afterwards kept it at home, where she was then living with her husband in Jasper county.

The said James McFarland testified for the defendant that the plaintiff had no money when he married her, not more than $10 and owed about $50. That she never paid any money on the land; that the several payments claimed by her to have been made with her money, were paid by him, out of his own money. It is not shown by the evidence that the defendant had or could have had any knowledge of these alleged dealings between the husband and wife, and the Hardins, even had they been satisfactorily shown to have taken place.

The plaintiff testifies that she told the defendant, before he bought, that James McFarland had no interest in the land and that the land was hers.  This the defendant denies, and testifies that he did not know she claimed any interest in the land until after he bought; that he bought upon the faith of an abstract of the title as appeared upon the records, and did not learn that she claimed the land or any interest in it until after he had bought.

There was evidence tending to show that about the year 1875 the plaintiff became insane and was confined to the lunatic asylum during nine months of that year; that she and her husband did not get along well together; that he was a litigious man, and had many difficulties and lawsuits; had been in the legislature; had been a bad man during the war, and was of unsavory reputation among his neighbors.

On the question whether the plaintiff ever had any separate estate, which could have gone into this land, without which there is nothing in the case we have her evidence on the one side and her husband's on the other.  Bearing directly upon this question we have no other evidence.  After carefully reading all the evidence in this record more than once, we find it impossible to say on which side the truth lies.  But even if we could say that the preponderance was in favor of the plaintiff, this would not be sufficient to authorize a court of equity to impress upon defendant's title an implied trust for the plaintiff's benefit.  "The rule in this court is settled by a uniform line of decisions, that parol testimony, in order to accomplish such an object and secure such an end, must be clear, strong and unequivocal; so definite and positive as to leave no room for doubt in the mind of the chancellor, as to the existence of such trust."  *Allen v. Logan*, 96 Mo. 591.  "There should be no room for a reasonable doubt

as to the facts relied upon to establish. the trust."
*Adams v. Burns*, 96 Mo. 361; *King v. Isley*, 116 Mo. 155,
and cases cited. Here everything is in doubt and we do
not see that the chancellor could do otherwise than
dismiss the bill on the evidence. The judgment is
affirmed. All concur; BARCLAY, J., in a separate
opinion.

### SEPARATE OPINION.

BARCLAY, J.—The judgment reached meets my
entire concurrence; but, with due respect, not the
observations as to the necessity of establishing the
existence of a trust beyond a reasonable doubt. There
are remarks to that effect in some of the reported cases,
but there are also decisions having an opposite ten-
dency.

In *Edwards v. Knapp* (1888), 97 Mo. 439, it was
held that "in civil cases the rights of the parties are to
be determined by the preponderance of the evidence"
(following *Marshall v. Ins. Co.*, 43 Mo. 586); and
approving the position taken in the dissenting opinion
of SHERWOOD, J., in *Polston v. See* (1873), 54 Mo. 296.
In the latter it is said that "no one ever had the temer-
ity to contend that the mind of the chancellor, before
entering a decree, had to be satisfied of the truth of the
allegations of the bill beyond a reasonable doubt"
(54 Mo. 300). The chief position in that opinion is
that a charge of crime, when an issue in a civil cause,
need be established only by a preponderance of evi-
dence. That rule is now the settled law in this state.
*Smith v. Burrus* (1891), 106 Mo. 101.

But it would be singularly inconsistent to hold that
a charge of murder, horse stealing or other felony,
contained in the pleadings of a civil action, might be
sufficiently sustained by a mere preponderance of testi-
mony, while a charge of breach of trust, or fraud, in a

different civil action involving equitable rights, required proof beyond a reasonable doubt.

There seems no good reason for such a distinction, nor for applying to suits in equity the rule as to the amount of evidence required to warrant conviction in a criminal case. That rule had its origin in the tenderness of the common law for persons charged with crime, and its humane solicitude that none should be convicted concerning whose guilt there was a substantial doubt. But the reasons that justify its existence as part of the law of criminal procedure do not sustain' its application to civil suits, as the decisions above cited show.

In my opinion the trust may be established by a preponderance of testimony. By which is meant that the evidence to prove it should be clear and convincing, such as to satisfy the conscience of the trial judge of its truth. *Richardson v. Robinson* (1846), 9 Mo. 801. That is all that any of the cases really mean, in my opinion, by the remarks requiring proof beyond a doubt, though the language used is, at first glance, susceptible of the construction now placed upon it.

It seems to me that the court never before intended to solemnly adjudicate that the rule as to the amount of proof required to convict of crime was applicable to equity causes, although not applicable to actions involving merely legal rights. But if the language of our decisions is supposed to express such an intention, then it should be limited as above indicated. It would at times amount to a denial of justice, in cases exhibiting substantial equity to require that every reasonable doubt in the judge's mind should be removed by proof, before he might properly grant equitable relief.

It appears to me that suitors in causes of that kind should have the benefit of the general rule applicable to other civil actions in respect of this subject.