## PLUMB et al., Appellants, v. COOPER et al.

### Division One, May 14, 1894.

1. **Resulting Trust:** ORAL EVIDENCE: STATUTE OF FRAUDS. While resulting trusts are not within the statute of frauds and may be established and enforced upon oral evidence, yet such evidence to vary the terms of an absolute deed must be clear, emphatic and convincing.

2. ——: LAND. Where one pays the purchase money of lands and the title is conveyed to a stranger, a trust *prima facie* results in favor of the party who paid for the land.

3. **Written Contract:** PRESUMPTION. When persons have put their contract in writing, it is conclusively presumed, in the absence of fraud, accident or mistake, that the entire engagement and the manner and extent of the understanding was reduced to written form.

4. ——: ——. Some exceptions to the foregoing rule stated.

5. The evidence in this case examined and held insufficient to establish a resulting trust.

*Appeal from Lawrence Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*N. Gibbs* and *Wm. B. Skinner* for appellants.

(1) The trust of the legal estate results to the man who furnishes the purchase money. Story's Equity, sec. 1201. It is presumed that the conveyance to the

third party is a matter of convenience. *Ibid.* The controlling question in inquiries of this nature, is the ownership of the purchase money. When this fact is established the trust is established by implication of of law. And the same rule holds as to a portion of the purchase money as to all of it, the resulting trust keeping tally with the ratio of ownership. *Shaw v. Shaw*, 86 Mo. 594; *Baumgartner v. Guessfield*, 38 Mo. 36. (2) Such trusts are not within the statute of frauds and may be proved by oral testimony. R. S. 1889, sec. 5185; *Shaw v. Shaw*, 86 Mo. 594; *Grove v. Fulsome*, 16 Mo. 543; *Cason v. Cason*, 28 Mo. 47; Story on Equity, sec. 752. (3) There is no presumption in this case that the first contract was included in the terms of the later one. The rule that parole evidence is not admissible to vary the terms of a written instrument "is directed only against the admission of any other evidence of the language employed by the parties in making the contract than that of the writing itself." *Brown v. Bowen*, 90 Mo. 184; 1 Greenleaf on Evidence, sec. 277. Thus, if a part only be reduced to writing, the part left out may be proved by parol evidence. *Lumber Co. v. Warner*, 93 Mo. 374, *loc. cit.* 384. Also parol evidence may be admitted to explain obscurity of the written terms. 93 Mo. 374, *loc. cit.* 384, *supra.* (4) If the written contract is vague as to what the net proceeds would be, the cost price not being given, then all the circumstances of the other deal were admissible to explain this, that is, whether the cost price was $4,500 or $6,000, and who paid that purchase price and for whom Cooper took the title. (5) Cooper, in his private letters to plaintiffs in September, 1889, calls this our land; and he sold two-thirds part thereof to Clark expressly subject to all claims of Plumb & Miner and which claims Clark assumed. This certainly is the very strongest evidence that plaintiffs had an interest in that land. *Ellis v.*

*Harrison*, 104 Mo. 270; *Wolfe v. Dyer*, 95 Mo. 545; *Jones v. Delassus*, 84 Mo. 541. (6) The written agreement made by Cooper and plaintiffs on June 17, 1889, after Cooper had contracted with Miss Wilfley for the land, expressly provides that the price at which said land should be sold should be agreed upon by Cooper and plaintiffs. This is certainly strong evidence that Cooper then recognized that plaintiffs had a vested interest in the land. If not, why are they, equally with Cooper who held the fee, to determine the price at which the land should be sold? (7) The precise relief to be given depends upon the circumstances of the case. *Baier v. Berberich*, 6 Mo. App. 537. If plaintiffs contributed one-fourth of the purchase price for said land they are entitled to a decree for one-fourth of said land, or whatever interest they may have in said land. *Baumgartner v. Guessfield*, 38 Mo. 36.

*Carr McNatt* and *Henry Brumback* for respondents.

(1) It is not permissible to introduce oral evidence of an alleged contemporaneous and antecedent contract where the contract itself was reduced to writing. 1 Greenl., Ev., sec. 275; *Chrisman v. Hodges*, 75 Mo. 415; *Pearson v. Carson*, 69 Mo. 550; *State, etc., v. Hoshaw*, 98 Mo. 358; *Morgan v. Porter*, 103 Mo. 135. (2) This court will not set aside the finding of the circuit court upon a question of fact arising in a cause of equitable cognizance, unless entirely satisfied that such finding is against the preponderance of the evidence. *Taylor v. Cayce*, 97 Mo. 249; *Cox v. Cox*, 91 Mo. 78; *Hard v. Foster*, 98 Mo. 308; *Toler v. McCabe*, 52 Mo. App. 534. (3) Parol evidence, to establish a resulting trust, must be so cogent as to leave no room for reasonable doubt in the mind of the chancellor. *Rogers v. Rogers*, 87 Mo. 259.

MACFARLANE, J.—This is a suit in equity, the object of which is to declare in plaintiffs a resulting trust in fourteen acres of land situate in Lawrence county, the legal title to which is held by defendant V. H. Abbott, under deed to him from his codefendant, Cooper.

The petition charges that in June, 1889, plaintiffs were real estate agents and dealers, doing business in Aurora, in said county, and at the time had an option for the purchase of thirty-seven and one-half acres of mining land near that town from the owner, Emily C. Wilfley, at the price of $4,500; that, during that month, defendant Cooper came from the state of Kentucky with the view of making investments in mineral lands for himself, defendant Abbott and one Chilton; that they sold said land to Cooper for the sum of $6,000, and obtained a contract direct from the owner to him (Cooper) which fixed the contract price at $4,500, the amount for which they had an option; that at the time of this sale it was agreed, verbally, between plaintiffs and Cooper, that the option should be considered and valued at $1,500, and that they should have one-fourth interest in the land; the deed, afterward made, vested the title in Cooper; that Cooper afterwards, in June, 1890, without their consent, conveyed to Abbott, who had notice of plaintiffs' rights, the fourteen acres in controversy being a part of the thirty-seven and one-half acres conveyed to Cooper; that Abbott refused to recognize their rights, and prayed that he be required to convey to them one-fourth interest in the land, or that they be invested therewith by proper decree.

The answer, though quite lengthy, is in substance a denial of the verbal contract relied upon by plaintiffs.

The evidence shows that Cooper went to Aurora in June, 1889, for the purpose of investing in mineral

lands for himself, Abbott and Chilton as charged. That prior thereto plaintiffs, as real estate agents, and dealers, had held a written option for the purchase of the thirty-seven and one-half acres of land at $4,500, but the time limited in the option had, twelve days previously, expired. Plaintiffs testified, however, that they had a verbal agreement with the owner by which the option continued until notice of withdrawal. There is no dispute that plaintiffs offered this land to Cooper, he agreed to take it, and a contract for its purchase at $4,500 was obtained from the owner, by which she undertook, upon the payment of the purchase price, to convey to Cooper. Plaintiffs both testified that, before the contract was made, a verbal agreement was entered into between them and Cooper, by which they were to have a fourth interest in the land.

Plumb, one of the plaintiffs, testified: "We were to have a fourth interest in the land. The land was to be called $6,000, and Mr. Cooper, Mr. Abbott and Mr. Chilton were to have, each, one-fourth, and Plumb and Minor one-fourth in lieu of our option." The other plaintiff testified to the same effect. Cooper testified positively that there was no agreement or understanding between him and plaintiffs, or either of them, by which they were to be considered as holding or owning, directly or indirectly, one-fourth interest in the land.

Immediately on delivery of the contract for the purchase of the land, a written agreement was entered into between plaintiffs and Cooper, signed by each, as follows:

"This agreement, made and entered into this the seventeenth day of June, 1889, by and between John C. Cooper, of Shelbyville, Kentucky, party of the first part, and Plumb & Minor, of Aurora, Missouri, parties of the second part, witnesseth: That, whereas the said John C. Cooper has this day purchased a tract of

thirty-seven and one-half acres of land near Aurora, Missouri, formerly belonging to Emma C. Wilfley, and now it is mutually agreed between the parties hereto, that the said Plumb & Minor are to co-operate with the said Cooper, and his assigns, in effecting the sale of said land, at a price to be agreed upon by the parties hereto, and the said Plumb & Minor are to have, for their services, the sum of one-fourth net profits realized out of the sale of said property, and the said Cooper will save the said Plumb & Minor harmless for their guarantee, this day made, of the discount of two promissory notes for $1,500 each, of even date herewith, for one and two years, at eight per cent., by Citizens' Bank of Shelbyville, Kentucky.''

This contract was written by Mr. Plumb, and it is not claimed that it does not express the agreement then in the minds of the parties.

Upon his return to Kentucky, Cooper at once executed and delivered to his associates a declaration of trust, setting out the purchase of the land, the consideration, $4,500, the terms of the purchase, and declaring that the land was held one-third each for himself, Abbott and Chilton. He also showed them the contract with plaintiffs. The notes mentioned in the contract were not made, but cash was paid in lieu thereof. The deed was made to Cooper for convenience, was written by plaintiffs, and the consideration expressed therein was $8,000. Plaintiffs paid no part of the consideration, but did pay $25 for an abstract of title. They paid nothing for the option. McNatt, who was the attorney for the vendor, testified that after the sale, plaintiff Plumb told him, in substance, that they had sold the land to Cooper for $4,500; that their option had expired, or was about to expire, and they preferred to make the sale, though they made no commission,

because it would advertise their business. Defendant Abbott testified that after he had received his deed for the fourteen acres in suit, Plumb told him he claimed no interest in the land.

On June 25, 1890, Cooper and Chilton sold the remaining two-thirds of the land to one Clark for $7,200, the purchaser assuming to pay any claim plaintiffs might have under the written contract with Cooper. Clark afterwards settled with plaintiffs and this receipt signed by plaintiffs was indorsed on the declaration of trust:.

"This is to certify that we have received the sum of $1,250 from J. M. Clark in full satisfaction of any rights or claims we may have had in the lands herein mentioned, so far as the twenty-three and one-half acres are concerned purchased by J. M. Clark from John C. Cooper."

This was in substance the evidence in the case. Some slight discrepancies, and apparent contradictions in the testimony of the witnesses, are pointed out by counsel and there was evidence tending to prove that plaintiffs' option at the time the sale was made was a mere employment, as agents, to make a sale at $4,500. We do not think a consideration of this evidence necessary to a proper determination of the merits of the controversy. Upon hearing the evidence the court dismissed plaintiff's bill and they appeal.

It will appear from the foregoing statement that the real issue for our determination, is whether such a verbal contract was made between plaintiffs and Cooper as resulted, in equity, in a trust in favor of plaintiffs to one-fourth interest in the land, to which Cooper took and held the legal title. There is no doubt that a resulting trust may be established and enforced upon parol evidence. Such trusts are not within the statute of frauds. But such evidence, in

order to vary the terms of an absolute deed, should be clear, emphatic and convincing. *Shaw v. Shaw*, 86 Mo. 598; *King v. Isley*, 116 Mo. 155; *McFarland v. LaForce*, 119 Mo. 585.

When one pays the purchase money, and the title is conveyed to a stranger, a trust, *prima facie*, results in favor of the party who paid for the land. *Miller v. Davis*, 50 Mo. 572; *Hall v. Hall*, 107 Mo. 109.

Plaintiffs predicate their equity to one-fourth interest in the land, upon the claim that, when the purchase was made, they held an equity from the owner, which was valued at $1,500, or one-fourth of the agreed value of the whole land, and, that releasing that equity, was equivalent to paying that part of the purchase price in money.

The evidence shows that any equitable right, they may have previously had, under the option from the owner, had expired before the purchase by Cooper. Plaintiffs' did have, however, verbal authority from the owner to sell the land for $4,500, and, in as much as she ratified the sale made to Cooper, they would undoubtedly have been entitled to all the purchase price agreed upon, in excess of that sum. Whether allowing this excess to be applied, as a part of the purchase price, would constitute such a payment as would create a trust, or not, we may concede that it would be a sufficient consideration to support a contract, such as plaintiffs rely upon. In any event, plaintiffs' claim rests upon the alleged contract. The question still is, was the contract proved, by evidence clear and convincing. The chancellor, who had the witnesses before him, thought not, and we concur in his conclusions.

The direct testimony of the witnesses, considering their respective interests, the circumstances surrounding the transaction, and the subsequent conduct of the parties is not, in our opinion, such clear and convinc-

ing evidence of the contract, as is required to establish
a resulting trust.    But, conceding this evidence, stand-
ing alone, to be sufficient, the written agreement, made
by the parties on the same day, upon the same subject-
matter, reciting the same transaction, if not absolutely
conclusive of the agreement of the parties, is so con-
vincing as to overcome all doubts that may otherwise
have existed.    "No rule of evidence is better established,
than the one which says, when the parties have put.
their contract in writing, in the absence of fraud,
accident or mistake, it is conclusively presumed that.
the whole engagement, and the manner and extent of
their undertaking, was reduced to writing."    *Morgan.
v. Porter*, 103 Mo. 135.

It is true, this rule, like most others, is subject to.
exceptions.    Thus "while parol evidence will not be
received to contradict or vary a written agreement,
still, if a part only of the contract be put in writing,
the matter left out may be supplied by parol evidence."
*Black River Lumber Co. v. Warren*, 93 Mo. 384.    Or
"a distinct collateral contemporaneous agreement,
independent of, and not varying the written agree-
ment," may be shown by parol evidence.    *Brown v.
Bowen*, 90 Mo. 190.

Plaintiffs insist that the verbal agreement, upon
which they rely falls within one or both of these excep-
tions.    It is difficult to understand why plaintiffs.
should have reduced to writing an agreement that they
should "co-operate with Cooper and his assigns, in
affecting a sale of the land" and should "have for
their services the sum of one-fourth of the net profits
realized out of the sale of said property," while, under
a previous agreement, they were entitled to one-fourth
of the property itself, and, consequently were interested
in making a sale, and were entitled to one-fourth of
the profits independent of the agreement, nor can we

understand why this contract should have been carefully written and the other and most important one, left entirely in parol.

Without deciding whether parol evidence was admissible, in view of the subsequent written agreement, we are satisfied that it was not sufficient to establish a resulting trust. The contract put in writing is entirely consistent with the evidence offered by defendants, and inconsistent with that offered by plaintiffs; and the writing is wholly inconsistent with the alleged verbal contract. Our conclusion, therefore, is that the entire understanding and intention of the parties were expressed in the writing, and the alleged verbal contract, if ever made, was thereby superseded. The judgment is affirmed. All concur.