## BRINKMAN, Appellant, v. SUNKEN.

### Division One, May 27, 1903.

1. **Res Adjudicata:** APPEAL: RECORD. Unless the judgment in the former litigation is set out in the abstract, the appellate court can not determine the sufficiency of the plea of *res adjudicata.*

2. **Resulting Trust:** CONFLICTING EVIDENCE. A plaintiff who wishes to have a deed to defendant cancelled and the title decreed to be in him, on the ground that his money paid for the land, must be able to establish that fact, by evidence so clear, positive, unequivocal and convincing as to leave no reasonable doubt in the mind of the chancellor. A preponderance of the evidence is not sufficient.

3. ———: ———: CASE STATED. Defendant had for five years been depositing money in bank and permitting it to draw interest and accumulate, until she had $1,665, and then the property in question was bought for $1,390, and deeded to her, and the money drawn out of the bank to pay for it. She was an industrious woman, worked diligently at various things, and was aided by her children. Plaintiff lived with her, was industrious, had been a soldier and in the penitentiary, and drawn a pension of $667, and $8 per month, and often made $24 per week as engineer of stationary engines, and testified that he lived with defendant, cohabited with her, helped her to support her family, and as fast as his money came in he turned it over to her, directing that she deposit all of it, except what she actually needed, in the bank in his name. She and her children testified that his statements were untrue, that he was merely her boarder, and had not paid all he owed her on that account. *Held,* that an equity court will not undertake to decide which testimony is true, for, at best, it will not authorize a decree adjudging plaintiff to be the owner.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. A. Talty,* Judge.

AFFIRMED.

*T. J. Rowe* for appellant.

Appellant contends that he furnished the $1,390 for the purchase of the property. If that contention is sustained by the evidence, then unquestionably the judgment herein should be reversed and a decree entered herein for plaintiff. See following decisions on resulting trust: Price v. Kane, 112 Mo. 412; Darrur v. Darrur, 58 Mo. 227; Hall v. Hall, 107 Mo. 101; Muller v. Davis, 50 Mo. 572; Plumb v. Cooper, 121 Mo. 675; Baumgartner v. Guessfield, 38 Mo. 36; Kelly v. Johnson, 28 Mo. 249; 119 Mo. 585; 116 Mo. 155; 96 Mo. 361; 87 Mo. 259; 86 Mo. 598; 60 Mo. 575; 57 Mo. 73; 53 Mo. 385.

*Carl Otto* for respondent.

The facts, when sifted, show appellant stands alone in his claim that he and respondent agreed to bank money, and he was to be the owner thereof. He is arrested for taking $35 from her and returns it. He has been in the penitentiary. He became acquainted with respondent as a washerwoman and visited her at first weekly. She claims he drank and gave her no money except board and was behind in that. Her children and she swear they all worked and saved. O'Connor, a disinterested witness, swears she had money in certificates and in a roll before Brinkman was with her. All these facts occur years ago, yet Brinkman could not remember the year he was paid his pension of $660, although it was just a few years before trial. This man knew all about her having these certificates, for he says she kept them in the wardrobe. To the neighbors, this old woman appeared poor, but none swore to any knowledge of any agreement between the litigants.

BRACE, P. J.—This is a proceeding in equity by which the plaintiff seeks to have the defendant divested of the legal title acquired by her, to the premises described in the petition, under a general warranty deed from Sarah B. Curran, to her, dated April 28, 1894, and

recorded in recorder's office of the city of St. Louis in book 1221, page 3. The answer is a general denial, and a plea of *res adjudicata,* upon which issue is joined by reply.

Upon hearing the evidence the trial court dismissed plaintiff's bill, and he appeals.

The consideration recited in the deed is $1,390, and counsel for plaintiff, who says he was not of counsel in the circuit court, opens his brief with the statement that, "Judging from the record, the case was tried below in a very bungling manner, and the pleadings are bursting with verbiage; but there is sufficient therein to show that the contention of the plaintiff is that he furnished the $1,390 with which the real estate described in the petition was purchased, and that in equity he is the owner of the same." This seems to be the theory upon which the case was tried in the circuit court, and will be accepted here. The same or a like bungler also seems to have prepared the abstract of this appeal, for while it is therein recited that the defendant read in evidence the pleadings and judgment in a former case, upon which the plea of *res adjudicata* is based, neither the pleadings, nor the judgment in that case, are set out in the bill of exceptions. This defect is in part remedied by a counter abstract filed by counsel for defendant, but the judgment does not even appear therein, and as the plea was traversed, we have in the record no evidence of a former judgment to support the plea. Such being the state of the record that defense is eliminated from the case, and the only question for determination is, whether or not the judgment of the circuit court is correct upon the facts disclosed by the evidence.

The following facts may be said to be disclosed by evidence in the case upon which reliance can be placed with a reasonable degree of confidence: Sometime prior to the year 1884, John Evers came with his family from Germany to this country, and located in the city

of St. Louis. His family consisted of himself, his wife, and five children. His wife's maiden name was Metta Sunken, and she is the defendant in this case. Sometime after the location of the family in St. Louis, John Evers disappeared, and sometime thereafter the defendant intermarried with a man named Hoben. Some time thereafter they separated, and she and the plaintiff became acquainted. In the meantime her oldest child, a boy, had died. On which occasion some kindly disposed persons, under the impression that she was in destitute circumstances, made her some small contributions in money, food and raiment, amounting in value to about ten dollars. The plaintiff was also from Germany, had resided in St. Louis since 1856, had been married and had several children, but was separated from his wife, who had procured a divorce from him, and to whom for a time he was compelled to pay an allowance of five dollars per week. He had been a soldier in the Federal army. Had been in the penitentiary, followed the vocation of engineer of stationary engines, was industrious, and when at work earned from eighteen to twenty-four dollars per week. In the year 1884, the defendant with her remaining children, Joana aged about ten years, Amanda about seven, Henry about five, and Rosa about two years, was living in a small house consisting of two rooms and a kitchen. Sometime during that year the plaintiff, under some arrangement between him and the defendant, moved his things to her house, and thereafter continued to reside there with her and her family and in houses to which she from time to time thereafter moved and occupied, making her house his home wherever it was, until sometime in the year 1895, except during temporary absences of a month or two. During this period of about eleven years she furnished him room and board, and did his washing and mending. She was an industrious, economical woman, and whenever called upon and her home duties permitted, went out to work for wages, washing, sewing, house-cleaning, etc.,

as opportunities offered, and as her children arrived at the age of ten years, they were put out to service, and brought their wages home to her, the two older girls until they got married at about the age of eighteen, and the boy from about the time he arrived at that age until this controversy arose.

Sometime prior to the year 1889, the defendant commenced making deposits in the name of Metta Sunken, in the Mullanphy Bank. When she commenced making these deposits, the dates and amounts thereof, do not appear.   It was agreed on the trial "that two certificates of deposit, giving the number, dates and amounts, appear on the books of the Mullanphy Bank under the name of Metta Sunken."   But no evidence from those books appears in the record.   Certain it is, however, that prior to 1889, she had accumulated a fund that was on time-deposit in that bank, and that in that year and the next year she transferred her account to the Bremen Bank, in which thereafter she made deposits as in the former bank in the name of Metta Sunken, as follows: Nov. 24, 1889, $365; Nov. 28, 1890, $100; Nov. 29, 1890, $100; March 14, 1890, $134; Sept. 19, 1891, $201, making in all $900, which she had on special deposit, drawing interest, in that bank on the 19th of September, 1891. In the meantime, on the 24th of April, 1891, the plaintiff received a pension check from the Government for $637. 67, which he says he deposited in the Northwestern Savings Bank, in his own name, and afterwards drew out the same in small sums.   After the date last aforesaid, the plaintiff every three months received a pension check from the Government for $24.   In the latter part of the year 1891, the defendant transferred her account from the Bremen Bank to the Northwestern Savings Bank, in which thereafter she made deposits in the name of Metta Sunken, as in the former banks, as follows: Dec. 3, 1891, $700; July 12, 1893, $155; Sept. 21, 1893, $350; Dec. 8, 1893, $160; and April 2, 1894, $300, making an aggregate of $1,665, which she had on

deposit in the Northwestern Savings Bank on the 28th of April, 1894, and which was the sum of all her previous deposits in the three banks, with the interest accumulated thereon. Out of this fund, on that day, the consideration of $1,390 recited in the deed in question, was paid. And so far as the reliable and uncontradicted evidence in the case goes, the premises conveyed in the deed, and described in the petition, were paid for with the money of the defendant, Metta Sunken.

Sometime in the year 1895, the friendly relations that theretofore had existed between the plaintiff and the defendant, ceased. They separated, and thereafter, probably to the October term, 1897, of the St. Louis Circuit Court, he instituted a suit against her, seeking to have the title conveyed by said deed vested in him and the defendant as joint tenants, failing in which he began this suit on the 6th of July, 1899. Turning now to the conflicting evidence in the case, the plaintiff testified that while he and defendant were living together, they slept in the same bed, and cohabited as if they were man and wife, and regularly as he drew his wages he turned them over to her for the purpose of defraying the household expenses, except such sums as he retained for his own personal expenses. That he told her "to put it in bank; what she didn't use in the family she should put that in the bank in my name." That as he drew his pension money out of the bank, he also with some like reservations gave that to her. That when he went to live with her, she had no means. That she told him that she had $300 when her first husband, Evers, disappeared, but that he had taken it, and left her with nothing. This is the substance of his evidence, upon which in connection with the facts established by the uncontradicted evidence heretofore stated, the chancellor was asked to find that the premises were purchased with his money, and thereupon to declare a resulting trust in his favor, for the title. On the other hand, the defendant (whose story evidently suffers in the telling

from her incapacity to express herself in the English language), flatly contradicts his statement that they slept in the same bed, and that they cohabited as if they were man and wife, and testified that during the whole period in which he made her house his home, he slept in a room by himself, and she slept in another room with her children (and in this she is corroborated by three of her children who testified in the case) and that during that period the only relation that he ever sustained to her was that of a boarder to whom she furnished board, lodging, washing and mending at the agreed price of five dollars per week. That except in payment on account of these, she never received any money from him, and that when they separated he was in her debt on that account. That when she and her first husband Evers, came to this country they brought $1,500 with them; that $1,000 of this was money she received from her father's estate. That when Evers disappeared (was killed, as she says) she still had $900 of this money concealed on her premises. That her oldest son while he lived worked and brought his wages home, and that she always had money, a fact, however, which she concealed until she commenced making deposits (at first in small sums) in bank, in her maiden name of Metta Sunken.

It is impossible to tell which of these stories is true, or how much truth there is in either of them. Nor is it necessary to determine which is most consistent with the established facts of the case. It is sufficient that whatever view may be taken of the evidence as a whole, it must be said that it fell far short of showing that the premises in question were paid for with the plaintiff's money by evidence so clear, positive, unequivocal and convincing as to leave no reasonable doubt in the mind of the chancellor, which is the standard required in all such cases by long and unbroken line of decisions in this State. [Johnson v. Quarles, 46 Mo. 423; Adams v. Burns, 96 Mo. 361; Allen v. Logan, 96 Mo. 591; Burdette

v. May, 100 Mo. 13; King v. Isley, 116 Mo. 155; McFarland v. LaForce, 119 Mo. 585; Plumb v. Cooper, 121 Mo. 668.]

The judgment of the circuit court is affirmed.    All concur, except *Robinson, J.,* absent.