# Chambers *v.* Richardson *et al.*

*Bill to declare and enforce Resulting Trust.*

1. The wife, during her husband's life, recognized his title to lands bought by him, and afterwards had dower allotted to her in them, and nearly four years after his decease, upon his estate being declared insolvent, obtained an allowance to her and an only child, in lieu of the homestead right, and subsequently forbade a sale of the lands by the administrator, under order of the Probate Court, on the ground that it had been purchased with money of her statutory separate estate. After this, she filed her bill alleging that she was ignorant of the fact that moneys of her statutory estate had been paid for the lands, &c., when she obtained dower and the allowance in lieu of the homestead right, &c., offered to pay back the money received for the latter, and prayed that title to the lands be decreed to her, &c. *Held:* 1. That after such a lapse of time, in which the wife made no claim to the lands and recognized the husband's title, she should show her right to relief by clear and satisfactory evidence, that the property was, in fact, purchased and paid for out of the wife's separate estate; that it is not sufficient that this should appear probable from the testimony, or that the mind inclines to that opinion,

but that the evidence, under the circumstances of the case, should be clear and sharp, producing a conviction not disturbed by doubts.

2. *Resulting trust in favor of wife; what, does not establish.*—The rents, incomes and profits of the wife's statutory estate, were given to the husband without liability for his debts, or accountability to the wife, &c., to enable him to provide for the comfort and well-being of the family. If, after doing this, the husband mixes some of the excess of the income of his wife's statutory separate estate with moneys of his own, purchasing lands and taking title to himself, this does not give the wife ownership in, or right to the property thus purchased.

APPEAL from Chancery Court of Sumter.
Heard before Hon. A. W. DILLARD.
The opinion states the facts.

SMITH & COBBS, for appellant.—The husband is the trustee of the wife, as to her separate statutory estate, and he stands on the same ground as any other trustee.—43 Ala. 685. The husband is not entitled to the income merely because he is not required to account for it as trustee; he is not vested with a title in his own right for any space of time. 36 Ala. 338. The rents, incomes and profits are not subject to his debts.—R. C. 2372; 41 Ala. 84. These lands were purchased with the corpus and the rents, incomes and profits of the wife's separate estate, and they cannot be sold to pay the debts of the husband. The wife is not estopped by claiming dower or receiving homestead in the lands. It is laid down, as a rule in equity, that a party shall never be estopped by his acts or admissions, except in cases where, in good conscience and honest dealing, he should not be permitted to gainsay them.—14 Ala. 377. No one has acquired rights by her acts, or sustained injury; the purchasers were notified that she forbid the sale, and they bought with notice.

SNEDECOR & COCKRELL, *contra.*—The appellant is estopped by her acts in demanding and receiving dower and homestead in the lands. These acts of hers have been acted on by others, and are conclusive against her.—19 Ala. 430; 16 Ala. 167; 22 Ala. 543; 29 Ala. 92. The husband is not bound to account to any one for the rents, income and profits of the separate estate of the wife, and lands purchased therewith do not belong to her.

MANNING, J.—Appellant, a widow, was married in 1851, when she was eighteen years old, to one A. W. Richardson, who died in 1863. In 1868 she was married to one Chambers, who died in Mississippi in 1871. At the time of

[Chambers v. Richardson et al.]

her first marriage, property, some money, and promissory notes for the payment of money belonging to her, were in the hands of her guardian Asa Amason, who, after the marriage, turned them all over to A. W. Richardson. The property consisted of slaves; how much money there was does not appear, but the money and notes, chiefly the latter, amounted together to $3,051.

In December, 1852, Richardson bought of one Jones 410 acres of land at $12.50-100 per acre, and received from him a bond to convey the title when the price should be paid. Richardson cultivated the land successfully about two or three years, making good crops, with three of his wife's slaves and one of his own, and with mules, implements of all sorts, and plantation furniture, which he purchased and put thereon. In 1855, he exchanged this land for another tract of 680 acres, acre for acre, so far as the former tract would go, and for the excess he paid fifteen dollars per acre. This land was conveyed by Epes, the other party to the contract, to Richardson, and Epes received from Jones, the original vendor of the 410 acres, a deed of that tract, directly from him. When these deeds were executed does not appear.

In 1866, appellant, then widow of Richardson, applied to the probate court for, and obtained dower of the 680 acre tract; and, subsequently, upon like application, procured an allowance of $500 in money to her and her only son by Richardson, in lieu of their homestead right in the same land. In 1867, the administrator who had reported Richardson's estate insolvent, obtained an order for the sale of the land to pay debts. One or two endeavors to sell under this order, for cash, having failed, the court, on application, authorized a sale for cash in part, and, as to the residue, on a credit of one and two years. A sale was subsequently made, at which notice was given that appellant forbid the same. This sale was reported to the court, approved by it, and confirmed.

The bill filed in this cause, in the court below, by appellant, claims the land as hers; alleges that it was purchased with money, a part of her statutory separate estate, in the hands of her husband as trustee; that she was ignorant of this and of her title, when she applied for dower, and the provision in lieu of homestead; offers to pay back the sum received for the latter, and prays that title be decreed to her.

After the lapse of so long a time, during which complainant made no claim to the land in controversy, and, in

view of her acts recognizing the title in her husband as valid, and of the inability in consequence of his death to obtain his explanation of the transactions, a court would not be justified in overturning the title to him and his heirs, without very clear and satisfactory evidence that the property was in fact purchased with and paid for out of the wife's separate estate. That it may appear by the testimony probable that this was so, or that the mind inclines to that opinion, is not sufficient. The evidence should, in such a case, be clear and sharp, producing a conviction not disturbed by doubts.

The strongest testimony in favor of complainant in the present cause, is that of her stepfather, Nathan Amason, and her relation, Mr. Lewis. The former, in answer seven, speaking of the purchase by Richardson of the 410 acres, says: "The first payment (I don't recollect the amount) was made with his wife's money, and the balance with the proceeds of the crops made by himself." This witness had previously testified: "He got this land from Dr. Ben. Jones, through me. When Dr. Jones sold the land to A. W. Richardson, he gave bond for the title when paid for." Not only is no amount mentioned, as that of the first payment, but it is not shown when this was made—whether at the time of the purchase, or subsequently—nor does the witness explain how he *knew* that the money paid was the wife's money. Without any impeachment of his integrity, may he not have confounded knowledge of a fact, with a conviction based on cogent circumstances, or such as he considered cogent, that the fact existed? In this connection, we must take notice of other parts of the evidence. The guardian of complainant testifies: "I have answered that she had money, and that I paid it over to A. W. Richardson. She had *notes and accounts* in my hands, and on my final settlement, as her guardian, I paid *everything over as money.*" The receipt shows that this payment of $3,051.24-100 was made September 2, 1851, and this witness again says of it: "Said amount was paid principally in promissory notes. I don't recollect the amount in notes." Now, the purchase of the Jones land was made in December, 1852, fifteen months after Richardson received the payment alluded to, and eighteen months after his marriage; and when the first instalment of the price was paid, we are not informed. How then the witness first mentioned knew that it was paid out of complainant's money ought, under the circumstances of this case, to have been explained.

The testimony of Mr. Lewis is not more satisfactory. Touching the first land transaction, he says: "This land was paid for with his wife's money." (The stepfather says the first instalment was, "and the balance with the crops made by himself.") Mr. Lewis says further, on cross-examination: "I was present when the land transactions inquired about took place, or when the funds passed." [There were two land transactions, and he had testified concerning both.] "I conversed with *all the parties* in interest in reference to this matter, and, *from them*, I obtained *the information which I have stated in my answers to the direct interrogatories.*" But it does not appear from which of them, when or where, or in what terms, he obtained the information that the 410 acres of land was paid for with complainant's money. Having been under that conviction, probably from conversations that are not detailed, if remembered, or by inference from other facts, the witness doubtless thought he knew the payment was so much; but he does not so testify to, and detail what he saw and heard, as to enable the court to determine what the fact was.

It certainly appears that Richardson had less property and money than his wife; but he had some money of his own at the time of his marriage, and he was an active and thrifty man, and made good crops. He also bought negroes, a good many mules, a carriage, plantation implements, &c.; whether with his wife's money or his own, or if with both, with how much of either, we do not know. Besides, evidently, he did not pay for the 410 acres of land until 1855, for the title, till the time of the trade with Epes, remained in Jones, and was by him conveyed to Epes. By that time Richardson handled a good deal of money. It is shown that he received a large amount that belonged to his wife's sister, Cynthia, and a good deal was made by crops from the land itself, cultivated with an increased number of hands and stock of both himself and his wife. For proceeds of these crops— the "rents, income and profits"—even of complainant's property, he, the husband, was not accountable to her, "her heirs or legal representatives."—Rev. Code, § 2372. And since he might take and hold the "rents, income and profits" without such accountability, so consequently he might hold any property into which these might be converted.

Doubtless the income was thus, by the law, given to him, and, at the same time, exempted from liability for his debts to enable him better to provide with it for the support and maintenance of his wife and children. All that is well

[Williams v. Auerbach.]

explained in the excellent opinion of WALKER, C. J., in *Boaz v. Boaz*, 36 Ala. 334. But from the nature of the subject (as therein said) his obligations in this respect "must be left to be enforced by the sense of conjugal and parental duty and affection." These are generally found to be efficient to that end. If in any instance they should not be—if the husband prove faithless, incapable, false, in this respect—then, as in *Boaz v. Boaz*, he may be deprived of the management and control of his wife's property, and of all power to receive and dispose of the income. No charge though of this sort is brought against Richardson, the deceased. He, doubtless, faithfully performed his duty as husband and father, and in taking care and providing for the increase of his wife's property as well as of his own. And if, after doing this, he mixed any excess of the income of his wife's separate estate, over the expenditures, with income derived from his own property and personal exertions, and therewith bought property for himself, or paid for property which was conveyed to him, his heirs and assigns, this does not give to the wife any ownership in or right to the property so purchased. So far as the *corpus* of her estate was so invested, the administrator of her husband's estate might be indebted to her, and the estate be charged with the payment of it, but not with the payment of the income.

We think with the chancellor that it does not sufficiently appear that the land was bought with the moneys of complainant's separate estate.

Let the decree of the chancellor be affirmed.