(February 19, 1892.)

## MAYHEW v. BURKE. KNOTT v. BURKE.

[29 Pac. 106.]

MINING PARTNERSHIP—EVIDENCE NOT SUFFICIENT TO ESTABLISH.—
1. While a partnership for the purpose of dealing in mining property may be proven by parol, the evidence to establish such partnership, when denied, must be clear and certain.

EVIDENCE INSUFFICIENT.—2. The evidence in these cases examined and held to be insufficient to establish such partnership. These cases were argued and submitted together, and as the evidence is the same, substantially, in each case, and the legal questions involved are the same, they are considered together by this court.

(Syllabus by the court.)

APPEALS from District Court, Shoshone County.

McBride & Allen, F. Ganahl and W. H. Clagett, for Appellants.

A partnership in lands or a partnership in mines is not required to be evidenced in the manner of the conveyance of real estate, and is not within the statute of frauds. (*Dale v. Hamilton*, 5 Hare, 369; *Chester v. Dickerson*, 54 N. Y. 1, 13 Am. Rep. 550; *Fairchild v. Fairchild*, 64 N. Y. 471; *Traphagen v. Burt*, 67 N. Y. 30; *Miller v. Ball*, 64 N. Y. 286; *Welland v. Huber*, 8 Nev. 208; *Murley v. Ennis*, 2 Colo. 300; *Settembre v. Putnam*, 30 Cal. 490; *Holmes v. McCrey*, 51 Ind. 358, 19 Am. Rep. 735; *Essex v. Essex*, 20 Beav. 449; *Bunnel v. Taintor*, 4 Conn. 568; *Hirbour v. Reeding*, 3 Mont. 15; *Treat v. Hiles*,

68 Wis. 344, 60 Am. Rep. 858, 32 N. W. 517; *Sauntry v. Dunlap,* 12 Wis. 404.)

Woods & Heyburn, for Respondent.

An interest in real property cannot be established by parol. (*Bird v. Morrison,* 12 Wis. 138; *Deloney v. Hutcheson,* 2 Rand. (Va.) 183; *Whaling Co. v. Borden,* 10 Cush. 458; *Dewey v. Dewey,* 35 Vt. 555; *Pitts v. Waugh,* 4 Mass. 424; *Hale v. Henrie,* 2 Watts, 145, 27 Am. Dec. 289, and note.)

HUSTON, J.—The action of *Mayhew v. Burke* was commenced by Charles E. Bruce, plaintiff, against the defendant, John M. Burke, to establish an alleged partnership between plaintiff and defendant, and for an accounting between them of the affairs of the alleged· partnership, and a conveyance by the defendant to the plaintiff of certain interests in mines and mining claims standing in the name of defendant, but claimed by plaintiff to be assets of said partnership. The complaint is, in substance, as follows:

"[Title of Court and Cause.]

"The plaintiff in the above-entitled action complains of the above-named defendant, and for cause of action alleges: 1. That heretofore, to wit, on or about the first day of June, 1884, at the town of Murray, Shoshone county, Idaho Territory, the plaintiff and defendant entered into and formed a copartnership for the purpose of carrying on a mercantile business in the said town of Murray and for the further purpose of acquiring mining property, to wit, quartz and placer mining property, by location and purchase, in their own names, or either of their names, in what was then and now is known as the 'Coeur d'Alene Mining Region,' in the county and territory aforesaid, under the firm name and style·of John M. Burke & Co.; and that thereafter they entered upon and continued to transact such copartnership business under their firm name. 2. That since the commencement of the said copartnership they continued to transact a mercantile business in the town and county aforesaid, until they discontinued their mercantile business in

said town, on or about the fifteenth day of February, 1888, without dissolving said copartnership, or having any settlement of the same. 3. That it was mutually (verbally) agreed, by and between said plaintiff and defendant, that the said plaintiff was to take charge of the mercantile business aforesaid, and to pay his entire attention to the same, and that the said defendant, in consideration of the plaintiff attending to the mercantile business, was to attend to the acquiring mining property by location and purchase as aforesaid. 4. That the said plaintiff did, under the said agreement between said parties, take charge of the said mercantile business in said town, and did give and devote his entire attention to the same, until the same was discontinued by mutual consent of said parties. 5. That said defendant has, since entering into said copartnership, acquired and accumulated a large number of quartz mining claims, and certain undivided interest therein, in his own name, and that the said defendant is now the holder of a certain undivided interest in and to all that certain named and described quartz mining claim hereto attached and made a part of this complaint, marked exhibit 'A.' 6. That the said defendant, during the continuance of the said copartnership, acquired in his own name, by location and purchase, and sold and disposed of for a large sum of money, the amount being wholly and entirely unknown to this plaintiff, an interest in and to all those certain quartz mining claims named and described in the list hereto attached, marked exhibit 'B,' and made part of this complaint. 7. That the said defendant has, during the continuance of said copartnership, acquired in his own name other real property, to wit, an interest in the townsite of Milo (the amount of said interest being unknown to the plaintiff), which the said defendant has sold and disposed of for a large sum of money, the amount of which is unknown to this plaintiff. 8. That the defendant has received a large amount of stock or shares in different corporations for mining properties which said defendant has sold to said corporations, the amount of said stock or shares, and the value thereof, being unknown to this plaintiff. 9. That this plaintiff, by the said

agreement of copartnership, is entitled to an undivided one-half interest in all of the said quartz mining property before mentioned and described in exhibit 'A,' and is entitled to one-half of the proceeds of the sales of all the said mining properties mentioned and described in exhibit 'B,' and to one-half of all the stock and shares, or the value thereof, that the said defendant has heretofore received, or now holds in the different corporations aforesaid, for mining properties sold to said corporations as aforesaid, and is entitled to one-half of the proceeds of the sale of defendant's interest in the townsite of Milo. 10. That since the commencement of the said copartnership the defendant has wrongfully, and without the assent of the plaintiff, applied a large sum of money, or receipts and profits of the said business, to his own use and by reason thereof has become indebted to the said plaintiff, and impeded the business thereof. 11. That the plaintiff has repeatedly requested the defendant to pay to the said plaintiff his interest and share of equal copartnership as aforesaid, or to account to said plaintiff therefor; but that the defendant has heretofore neglected and refused, and still does neglect and refuse, so to account, and has threatened to continue to collect and appropriate the copartnership money to his own use. Wherefore the plaintiff prays that the said copartnership may be dissolved, and an accounting taken of all dealings and transactions thereof; (2) that the said defendant be required, by this honorable court, to convey, by good and sufficient deeds, to this plaintiff, the undivided one-half interest of all the said mining property mentioned and described in exhibit 'A'; (3) that the remaining property of the firm be sold, and the firm's debts and liabilities paid off, and the surplus, if any, divided between the plaintiff and defendant, according to their respective interests—and that the plaintiff may have judgment for such amount as may be found due this plaintiff, and for such other relief as may be just in the premises, together with costs of this suit. And the plaintiff will ever pray, etc.

"A. E. MAYHEW,

"Attorney for Plaintiff."

Then follows, as an exhibit, a list of the various mining and other real properties claimed by plaintiff to belong to said alleged partnership. The answer denies specifically and generally all the allegations of the complaint. Bruce, the plaintiff, having died pending the suit, on suggestion A. E. Mayhew, administrator of the estate of Bruce, was substituted as plaintiff. The case was heard by the court without a jury, and, after the introduction of the evidence on the part of plaintiff, the defendant moved the court to strike out all the testimony introduced by plaintiff, which motion was granted by the court, upon the ground that it is incompetent to prove a partnership in lands by parol evidence. The defendant then moved for judgment, which motion was granted by the court, and judgment was thereupon entered in favor of the defendant, and against the plaintiff, and from this judgment this appeal is taken.

The appellant assigns six specifications of error, only two of which were urged at the hearing here—the first and second. The first specification of error is that "the court erred in sustaining the plaintiff's motion to strike out the testimony introduced by the plaintiff in support of his cause of action"; and the second, "The court erred in dismissing the plaintiff's action."

The plaintiff alleges a verbal partnership entered into, by and between plaintiff and defendant, on or about the first day of June, 1884, at the town of Murray, in the county of Shoshone, Idaho territory, for the purpose of carrying on a mercantile business in said town of Murray, and for the further purpose of acquiring mining property, to wit, quartz and placer mining property, by location and purchase, in their own names, or either of their names, in what was then known as the "Coeur d'Alene Mining Region"; that the name and style of the firm was John M. Burke & Co. No other terms or conditions of said contract of partnership are alleged, except what is contained in the third subdivision of the complaint: "That it was verbally agreed, by and between said plaintiff and defendant, that said plaintiff was to take charge of the mercantile business aforesaid, and to pay his entire attention to the same; and that the said defendant, in consideration of the plaintiff attending

to the mercantile business, was to attend to the acquiring of mining property by location and purchase, as aforesaid." Not a word is said in the complaint as to the amount of capital to be employed in the transactions of this firm, nor in what proportion the capital was to be furnished as between the partners. A mercantile business was carried on for nearly four years, as is alleged in the complaint; and yet it is not alleged, nor is it shown by the testimony in this case, that either of the partners ever furnished a dollar of capital. This complaint was by Charles E. Bruce, verified by him, and he must certainly have known the amount of capital, if any (and we are not at liberty to infer that such a business could be carried on without some capital), that was invested in said business, and the amount furnished by each one. As the terms of the partnership are set out in the complaint, the labor of Bruce in running the store was to stand off the work and labor of Burke in acquiring mining property by location and purchase. If Bruce furnished the capital, or any portion of it, either to carry on the mercantile business, or to pay the expense of purchasing or prospecting for mines, would he not have so stated? His silence upon this matter is painfully suggestive. On the other hand, if Burke furnished all the capital to be, or that was, used in the transactions of the firm, and Bruce furnished nothing but his services in the store, and was to be equally interested with Burke in all mining operations, it would present such a novel contract of partnership as would require very clear proof, in the face of a denial by one of the alleged partners, to establish it. Where a party comes into a court of equity seeking to establish a partnership, and the trust resulting therefrom, by parol evidence, he should be most clear and explicit, both in the setting forth of his cause of action and in his proofs. Even those courts which have held that a partnership in lands, or rather in the purchase and sale of lands, may be proven by parol, have uniformly held that the proofs must be clear and certain. While we concede that a partnership, for the purpose of dealing in mining properties, may be proved by parol, still the proof of such partnership must be clear and certain, and,

after a most careful and scrutinizing study of the evidence in this case, we are compelled to say that neither the pleadings nor the proofs present such a case as would warrant a court of equity in decreeing a partnership established.

There is nothing in the evidence, nor in the allegations of the complaint, which even intimates that any of the property sought to be subjected to the partnership was purchased or procured by partnership funds; and certainly it will not seriously be contended that the statement of the terms of the co-partnership, as set forth in the complaint, will warrant any such presumption. The plaintiff does not allege, or attempt to prove, that he ever furnished or put into the partnership one dollar of money or property. All of the property set forth and described in the complaint, it is shown by the evidence, was acquired by the defendant, and, in the absence of any proof to the contrary, presumably by the use of his own means. The books of the firm of John M. Burke & Co. were introduced in evidence, but they failed to furnish the slightest proof of a partnership between the plaintiff and defendant, beyond the mercantile business, and these books were kept and controlled by Bruce. The only evidence offered by the plaintiff in support of his complaint, or to establish the alleged copartnership, was certain admissions or statements of the defendant made to, and in the presence of, certain witnesses. All the authorities unite in pronouncing this the least satisfactory of any class of evidence. We doubt if a case can be found where a partnership of this character has ever been permitted to be established upon this kind of evidence alone. Some letters of defendant to the plaintiff were introduced, but they do not even tend to prove the partnership alleged in the complaint. The preponderance of authority is in favor of the rule that, to take a case out of the operation of the statute of frauds, it must appear that the lands were purchased, or to be purchased, with the funds of the partnership. (1 Bates on Partnership, sec. 302, and cases cited in note.)

The two cases were heard together in this court, and with one exception involved the same questions, and we may there-

fore look at the evidence of the two cases together. The pleadings are substantially the same in both cases. In the case of *Mayhew v. Burke* there was no evidence offered by the defendant. In the case of *Knott v. Burke* the evidence of the defendant is given. Examining this evidence, we find that none of the property mentioned in the complaint was purchased or procured by partnership funds, but wholly by means furnished by defendant. It moreover appears that all of the funds with which the mercantile business was started, and the credit upon which it was sustained, were supplied by the defendant. The paper writing signed by the defendant, and which purported to be an admission by defendant that Bruce was a full partner with him in his mining operations, and which writing was introduced by plaintiff in both cases, and stricken out by the court upon the ground that it was inadmissible under the pleadings, the testimony of the defendant explains, and is corroborated by an examination of the paper itself. We have examined with a great deal of care the cases cited by the appellants' counsel in their brief, and we are unable to see the applicability of any one of them to the cases under consideration here. In *Fairchild v. Fairchild,* 64 N. Y. 471, the plaintiffs and defendants were acknowledged partners. One of the partners purchased real property with partnership funds, and, as the court finds, with the intention and understanding, by all the members of the firm, that said property so purchased belonged to the firm assets, and all payments, expenses, etc., were kept upon the firm books—a palpable difference, we apprehend, between that case and the cases at bar, in which it is neither alleged nor proved that any of the property in question was purchased or procured with the funds of the partnership. The case of *Traphagen v. Burt,* 67 N. Y. 30, was another case where the land was both purchased and improved by the joint funds of plaintiff and defendant, who were acknowledged partners. The question of partnership did not arise either in this case or the case in 64 New York. The question in both of those cases was whether certain realty purchased in the name of one partner, with funds of the copart-

nership, should be considered partnership property. *Miller v. Ball,* 64 N. Y. 286, deals solely with the question of part performance. Says the court in *Fairchild v. Fairchild, supra;* "Proof of partnership, for the purpose of buying and selling land, presents a different question from that which arises when an existing partnership purchases land for its use or benefit"; and the same distinction is recognized by Judge Story in *Smith v. Burnham,* 3 Sum. 435, Fed. Cas. No. 13,019. In the case of *Welland v. Huber,* 8 Nev. 203, the partnership was not contested. (*Settembre v. Putnam,* 30 Cal. 490.) The owners of a mine agreed with another party, if he would devote his labor and skill in exploring and developing the mine, they would furnish him with tools and provisions, and give him a share in the mine, if it proved valuable, and the action was brought to enforce this contract.

In *Knott v. Burke,* the plaintiff seeks to recover from the defendant certain interest in mining property alleged to have been conveyed to him by Charles E. Bruce in his lifetime. Said deed purports to have been executed by Charles E. Bruce, and John M. Burke by Charles E. Bruce, his attorney in fact, dated May 5, 1890, and recorded on May 23, 1890, the same day the suit was commenced. The power of attorney from Burke to Bruce bears date November 27, 1886, and contains the usual power of revocation. It was recorded December 7, 1886. This power of attorney was revoked by an instrument in writing, duly executed and acknowledged by John M. Burke on the twentieth day of April, 1888, and recorded in proper office on April 23, 1888. It is claimed by counsel for the appellant that this power of attorney was irrevocable, being coupled with an interest, to wit, the interest of Bruce, as the partner of Burke, in the property purporting to be conveyed. The plaintiff failing to establish the partnership, of course this contention fails. We have been unable to find any authority or precedent which would justify the finding of a partnership upon the evidence in this case. Conceding all that is claimed under the authorities which follow *Dale v. Hamilton,* 5 Hare, 381, we would still be without support in such a conclusion.

The defendant admits the copartnership in merchandising, and the instrument executed by him, and introduced by plaintiff, made a distinction between the merchandise business and the mining operations. The testimony of Judge Mayhew, while given with characteristic frankness and candor, utterly fails to sustain the allegations of the complaint, and the same may be said of the testimony of Judge Claggett and of the other witnesses on the part of the plaintiff. It is made up entirely of the recollection, by witnesses, of expressions of defendant made in desultory talks and conversations which took place several years ago; as instance, in the case of the witness Rutherford (he was a sort of general clerk about the store of John M. Burke & Co.), referring to conversations between Bruce and the defendant, he says: "I have heard them talking there, sir, and my business was working around the store, and I stayed there, and couldn't pay attention to everything that was said. Sometimes I wasn't busy, and would hear some of the conversations expressed between them; but all the facts I don't know." Further on, this witness testifies, in answer to a question to that intent: "My hearing has always been affected, more or less, ever since I was twenty odd years of age." "Whenever I catch cold it's worse than at other times." And against this sort of testimony we have the clear, lucid statements of the defendant, Burke, as to all the transactions and dealings between himself and Bruce; which, while they would appear extremely erratic and heterodox to the conservative "gold-bug" of the land of the rising sun, are, nevertheless, most familiar to the "bare-footed silver baron" of the Pacific slope. It is clearly shown by the evidence that Burke furnished all the capital used in the mercantile business, as well as in the mining operations; that Bruce was brought to the country by Burke to look after the store, and had a half interest therein for his services. This is what the evidence clearly establishes, and upon this evidence we think the conclusion of the district court was clearly correct, although we are not fully in accord with the reasons he gives, or the grounds upon

which he bases his decision. The judgment of the district court in the cases of *Mayhew, Admr., etc. v. Burke* and *Knott v. Burke* are affirmed, with costs to the respondent.

Sullivan, C. J., and Morgan, J., concur.