(December 29, 1904.)

## MORROW v. MATTHEW.

[79 Pac. 196.]

GRUBSTAKE AGREEMENT—MINING CLAIMS—ACTION TO DECLARE LOCATOR TRUSTEE—WEIGHT OF EVIDENCE—EXCEPTION FROM GENERAL RULE.

1. The rule which has been adopted and followed by courts of equity requiring a plaintiff who seeks to establish a trust in real property contrary to the express terms of the deed which vested title in another to make out his case "clearly and satisfactorily beyond a reasonable doubt,'' does not find the same reason for its application in a case where a party to a "grubstake" agreement invokes the aid of a court. of equity in establishing a trust in mining claims located on the public domain by one of the parties to such agreement.

2. ID.—A location notice is not an instrument of like solemnity and dignity as sealed instruments at common law, and in cases seeking to establish a trust is not entitled to protection under the same rules applicable to sealed instruments.

3. The courts will not refuse to enforce a "grubstake" agreement simply because a complainant cannot produce that great preponderance of evidence which produces a moral certainty and precludes all reasonable doubt.

(Syllabus by the court.)

APPEAL from District Court in and for Shoshone County. Honorable Ralph T. Morgan, Judge.

Action to establish a trust in certain mining property acquired under a "grubstake" agreement and to compel a conveyance of the trust interest to the *cestui que trust*. Judgment for plaintiff and order denying a new trial, from both of which defendants appealed. Affirmed.

The facts are stated in the opinion.

Robertson, Miller & Rosenhaapt and James E. Babb, for Appellants, cite few authorities upon the questions decided not cited in the opinion.

George G. Pickett, W. B. Heyburn, John P. Gray and John B. Goode, for Respondent.

Where two or more parties enter into a contract, as they did in this case, one or more of the parties cannot, without notice to the other parties in interest, rescind the same at will. The contract cannot be affirmed in part and rescinded in part. The party wishing to rescind must exercise the right within a reasonable time, and not wait until a rescission will work a great injury to the opposite party. (*Chadbourne v. Davis,* 9 Colo. 581, 13 Pac. 721; *Mills v. City of Osawatomie,* 59 Kan. 463, 53 Pac. 470; *Cole v. Smith,* 26 Colo. 506, 58 Pac. 1086.) Mr. Lindley in his work on Mines, second edition, volume 2, section 858, page 1556, says, speaking of grubstake contracts: "Should the prospector during the life of the contract, locate in his own name to the exclusion of the one supplying the capital, the title thus acquired by him would be held in trust for his associates in the joint venture to the extent of his interest, not necessarily on the theory of partnership, but for the reason that his advances contributed to the acquisition of property." (*Meylette v. Brennan,* 20 Colo. 242, 38 Pac. 75.) The law as to what evidence is necessary to support a conveyance under a contract like the one in question has been passed upon by the supreme court in this state in the case of *Rice et al. v. Rigley et al.,* 7 Idaho, 115, 61 Pac. 290; *Mayhew v. Burke,* 3 Idaho, 333, 29 Pac. 106.

AILSHIE, J.—This action was commenced by the plaintiff, J. A. Morrow, on what is commonly known as a "grub-

stake" agreement to recover a one-sixth interest in and to the Wild Rose, Albert Edward, Little Annie, Lillian and Chronicle quartz mining claims, and the Wild Rose millsite. The agreement on which the plaintiff claims the right of recovery was in parol. The contract as testified to by plaintiff, and corroborated in many respects by his witnesses, was substantially as follows: About December, 1899, the defendant, Matthew, met with the plaintiff and defendant Ellis at the place where they were engaged at work, and stated to them that he had been prospecting on Quartz creek for several years, and had found nothing worth locating, and that he wanted to change the following year and prospect in another locality. He requested the plaintiff and Ellis to grubstake him for prospecting the following year. After some discussion over the matter it seems that they agreed to do so, and he informed them that it would be about June or July of the following year before he would be ready to leave the Quartz creek country and go over to their section to begin prospecting. Morrow and Ellis agreed to furnish him a cabin, provisions and tools for the work. Matthew stayed over night with Morrow and Ellis and left the following day. The matter ran along until about the latter part of August, or 1st of September, 1900, and in the meanwhile the plaintiff met Matthew frequently, and was as often asked by him if he still intended to carry out the agreement, to which the plaintiff repeatedly replied in the affirmative. Sometime about the last-named date Ellis had a talk with the plaintiff concerning their carrying out the agreement, and they agreed that they would do so, and when Matthew came over in a few days they told him to occupy a cabin of theirs, known as the Dewey cabin, and to use the provisions and tools therein. At that time the plaintiff and Ellis appear to have had a very fair supply of provisions on hand at the Dewey cabin, and on the day Matthew went into this cabin Ellis bought a further small bill of provisions. Matthew occupied the cabin, used the provisions and tools and began prospecting and carried this on from time to time until May or June of the following year. In the meanwhile the plaintiff had furnished him some small additional items, and notified one of the merchants at Pierce

City to let him have such things as he needed. A great deal of this evidence is corroborated by other witnesses produced by the plaintiff. On the other hand, the greater portion of it is denied by defendants, Ellis and Matthew and witnesses produced by them. It can serve no useful purpose here to go into a detailed statement of the evidence given by each of the witnesses produced, and we shall not attempt it. During the period covered by this agreement, the defendants acquired interests in each of the claims for which the plaintiff sues to recover the interest claimed by him. After the conclusion of the trial had in this case, the court made his findings of fact and conclusions of law, and rendered and entered judgment in favor of the plaintiff as prayed for in his complaint. After a most careful and thorough examination of the record in this case and the law applicable thereto, we are convinced that the findings of fact as made by the trial judge are sustained by the proofs in the case, and we therefore give them here in full:

"1. That about the first day of September, 1900, the plaintiff and the above-named defendants entered into an agreement whereby, and by the terms of which agreement, the above-named defendant Matthew undertook with the plaintiff and the above-named defendant Ellis that he, the said defendant Matthew, would go into the southern portion of Shoshone county, Idaho, and there prospect for mines and when found, locate mining claims, subject to location under the laws of the United States and the state of Idaho, for the joint use and benefit of this plaintiff and said defendants. That in each and every mining claim so discovered, located or acquired in any manner by said Matthew, by the terms of said agreement, the plaintiff and the said defendants were to be equally interested, whether said defendant Matthew should acquire the said mining claim, or any interest therein, by location, purchase, gift or for services rendered.

"2. That in consideration of the acts and things so to be done by the said Matthew as aforesaid, this plaintiff and the defendant Ellis entered into an agreement with the said Matthew, whereby and by the terms of which agreement this plaintiff and said defendant Ellis were to furnish the said Matthew such sup-

plies, tools and implements and other things of necessity incident to such prospecting, locating and acquiring mining claims, as said Matthew might require in and about the keeping of the said agreement and contract on his part.

"3. That at the time of the making of the said agreement, the plaintiff and the said Ellis furnished the said Matthew with a complete outfit of provisions, supplies, tools and other things necessary to be used in prospecting as aforesaid, and delivered the same to the said Matthew, whereupon the said Matthew, pursuant to said agreement, went into the southern portion of Shoshone county for the purpose of prospecting as aforesaid.

"4. That while so using the materials and supplies furnished by the said plaintiff and defendant Ellis as aforesaid, the said defendant Matthew did, on or about the twenty-fifth day of May, 1901, acquire an undivided one-half interest in and to the Wild Rose mining claim, situated in the Pierce City mining district, Shoshone county, Idaho, which said Wild Rose mining claim was located in the name of W. S. Wilkinson, and said Matthew assisted in the making of said location, and said Wilkinson, pursuant to an agreement with the said Matthew, conveyed the said undivided one-half interest in and to the said Wild Rose claim to said Matthew, notice of location of said Wild Rose lode mining claim being recorded on the fifteenth day of July, 1901, in book W of Quartz Locations, at page 24 thereof, records of Shoshone county, Idaho. That the said Matthew received a deed to the said undivided one-half interest in the said Wild Rose mining claim from said Wilkinson, pursuant to an agreement made between the said Wilkinson and the said Matthew. That said Matthew should share equally in said location by reason of having prospected for and participated in the location of said claim, and said Wilkinson was fully advised at the time of the making of the deed that the said Matthew was working under a grubstake contract with this plaintiff and the defendant Ellis.

"5. That the plaintiff, independent of the said Ellis, furnished the said Matthew provisions and supplies for the purpose of prospecting as aforesaid, of the value of more than $75, and

said Matthew was living upon and using the supplies so furnished by plaintiff at the time of the location of the Wild Rose mining claim, and of his receiving an interest therein, and said Matthew received such interest in said Wild Rose mining claim for the benefit of himself, the said Ellis and this plaintiff in equal portions.

"6. That by reason of the said contract and the matters and things hereinbefore set forth, the plaintiff is the owner of, and since the date of location thereof has been the owner of, an undivided one-sixth interest of, in and to the said Wild Rose mining claim, the Albert Edward lode claim, the Little Annie lode claim, the Lillian lode claim, and the Chronicle lode claim, and the Wild Rose millsite, all situated in Shoshone county, state of Idaho.

"7. That it appears from the evidence that defendant Matthew had conveyed, before the commencement of this suit, all of the interests standing in his name, except an undivided one-third interest in the Chronicle lode claim. That the said Ellis has standing in his name and subject to the rights of the plaintiff an undivided one-fourth interest in the said Wild Rose lode claim, an undivided one-third interest in the Wild Rose millsite, and an undivided one-third interest in each of the other above-named mining claims.

"8. That the Wild Rose mining claim was first located in the name of defendant Matthew and one Wilkinson, and that the defendant Matthew at the time of the location of the Wild Rose lode claim, held a one-half interest therein under the terms of the prospecting contract hereinbefore found, and of said one-half interest said Matthew owned one-sixth, said Ellis owned one-sixth and said plaintiff owned an undivided one-sixth interest therein.

"9. That the defendants Ellis and Matthew undertook to defraud the plaintiff of his interest in the mining claims located under said contract, and that the taking down of the notice of location containing the names of Matthew and Wilkinson, and substituting for it a location notice in the name of Wilkinson alone, and the subsequent taking of deed from Wilkinson to Ellis (Matthew) for a one-half interest in said claim was a

part of the plan entered into between Matthew and Ellis to defraud the plaintiff of his rights under said contract.

"10. That the plaintiff is in no way indebted to the defendants Matthew and Ellis in connection with the prospecting, locating, owning or recording of said several mining claims, or any of them. That the plaintiff kept and performed all of the terms of his contract for furnishing supplies and necessary materials to the defendant Matthew, and that said locations were each and all of them made during the life of said contract, and during the time the plaintiff so furnished such supplies."

The defendants Ellis and Matthew in their answer deny having ever entered into the contract as alleged by the plaintiff, and as a further and separate defense set up a written contract between Ellis and Matthew, whereby Ellis agreed to furnish Matthew with provisions and tools for the period of one year from August 8, 1900, and pay him the sum of $10 per month, and Matthew agreed in consideration thereof to prospect for minerals, and to grant to Ellis an undivided one-half interest in and to all discoveries made by him. The chief contention in this case seems to have been made over the Wild Rose claim, which is evidently the one of greatest value. The circumstances as detailed in the record surrounding the location of the Wild Rose, and the subsequent record title therein acquired by Ellis and Matthew was somewhat peculiar and singular, and indeed arouse some spirit of inquiry themselves. Matthew appears to have informed one W. S. Wilkinson, the locator of the Wild Rose, where there was some good-looking float and a promising field for prospecting, and in pursuance of the information thus acquired Wilkinson went into the section where he afterward located the Wild Rose, and prospected and discovered what appeared to be valuable ores, and later Matthew assisted in the location of the claim. It appears that the notice of location was prepared and contained the names of Wilkinson and Matthew as locators; but according to the version given by Matthew, Wilkinson objected to having a partner in the claim, and accordingly posted a notice containing his own name alone. After the location, however, it appears that Wilkinson deeded Matthew an interest in the claim. Matthew in

turn conveyed one-half of the interest so acquired to Ellis. It is claimed by the plaintiff that this transaction between Wilkinson, Matthew and Ellis was had for the purpose of defeating any interest that Morrow might acquire under their grubstake agreement. It is argued that if Matthew and Wilkinson had jointly located the Wild Rose, then, under the agreement contended for by plaintiff, the defendants Matthew and Ellis, and the plaintiff would have each been entitled to a one-sixth interest in the claim; but if Wilkinson conveyed a one-half interest in the claim to Matthew and they left Morrow out, then Matthew and Ellis would each own a one-fourth interest in this claim, and that this was the controlling reason why Matthew took his interest by deed rather than as a joint locator with Wilkinson. It should be borne in mind that the defendants denied all these charges and supported their denials with their sworn testimony.

A great number of errors have been assigned by the appellants Matthew and Ellis, some of them going to the rulings of the court in the admission of certain testimony and rejection of other, while others are directed at the insufficiency of the evidence to support the findings. After a careful examination of the various rulings of the court complained of in the admission and rejection of testimony, we are satisfied that no error has been committed in those respects. We do think, however, that it would have been proper for the court to have allowed the question asked the plaintiff on cross-examination, which tended to show that he had been guilty of laches in not asserting his claim in the property sooner. These facts, however, were brought out at other places and frequently in the course of the trial, and we do not think the appellants were in any way prejudiced by the ruling of the court, as the answers, if given, would have only been cumulative.

The main question urged upon this appeal, and we think the only serious question and difficult question presented, is that the evidence as a whole does not support the findings and judgment.

Appellants in their brief say: "The clear preponderance of this case is in favor of the defendants; and under no condition

can it be considered as ever approaching the bare preponderance even, in favor of the plaintiff, to say nothing of the certainty and definiteness required by the plaintiff in a case of this kind," and thereupon the appellants lay down the following proposition: "The plaintiff is required to produce more than a bare preponderance of the evidence, and must make out his case clearly and satisfactorily beyond a reasonable doubt to be entitled to a decree." In support of this position taken we are cited to the following authorities: *Rice v. Rigley*, 7 Idaho, 115, 61 Pac. 290; *Skeen v. Marriott*, 22 Utah, 73, 61 Pac. 296; *Chambers v. Emery*, 13 Utah, 374, 45 Pac. 192; *Chittyna Exp. Co. v. Fitch* (Alaska); *Mayhew v. Burke*, 3 Idaho, 333, 29 Pac. 106; *Larkins v. Rhodes*, 5 Port. (Ala.) 207; *Lee v. Browder*, 51 Ala. 289; *Chambers v. Richardson*, 57 Ala. 87; *Lehman v. Lewis*, 62 Ala. 133; *Mobile Life Ins. Co. v. Randall*, 71 Ala. 221; *Bibb v. Hunter*, 79 Ala. 358; *Reynolds v. Caldwell*, 80 Ala. 235; *Crittenden v. Woodruff*, 11 Ark. 89; *Johnson v. Richardson*, 44 Ark. 370; *Crow v. Watkins*, 48 Ark. 174, 2 S. W. 659; *Millard v. Hathway*, 27 Cal. 120; *Woodside v. Hewel*, 109 Cal. 481; *Harvey v. Pennypacker's Exr.*, 4 Del. Ch. 460; *Lofton v. Sterret*, 23 Fla. 574, 2 South. 837; *Mahoney v. Mahoney*, 65 Ill. 407; *Heneke v. Floring*, 114 Ill. 558, 2 N. E. 529; *McGinnis v. Jacobs*, 147 Ill. 31, 35 N. E. 214; *Jenison v. Graves*, 2 Blackf. (Ind.) 448; *Parmlee v. Sloan*, 37 Ind. 482; *Olive v. Dougherty*, 3 G. Greene (Iowa), 372; *McGregor v. Gardner*, 14 Iowa, 342; *Parker v. Pierce*, 16 Iowa, 231; *Sunderland v. Sunderland*, 19 Iowa, 329; *Childs v. Griswold*, 19 Iowa, 363; *Nelson v. Worrall*, 20 Iowa, 471; *Maple v. Nelson*, 31 Iowa, 327; *Sheppard v. Pratt*, 32 Iowa, 298; *Snelling v. Utterbach etc.*, 1 Bibb (Ky.), 610; *Hickey v. Young*, 1 J. J. Marsh. (Ky.) 3; *Carey v. Callan's Exr. etc.*, 6 B. Mon. (Ky.) 45; *Whitmore v. Beanard*, 70 Me. 284; *Faringer v. Ramsey*, 4 Md. Ch. 37; *Dorsey v. Clarks*, 4 Har. & J. 557; *Geer v. Baughman*, 13 Md. 268; *Thomas v. Standiford*, 49 Md. 184; *Witts v. Horney*, 59 Md. 585; *Kendall v. Mann*, 11 Allen, 19; *Johnson v. Quarles*, 46 Mo. 426; *Ringo v. Richardson*, 53 Mo. 395; *Forrester v. Scoville*, 51 Mo. 269; *Kennedy v. Kennedy*, 57 Mo. 73; *Forrester v. Moore*, 77 Mo. 662; *Shaw v. Shaw*, 86 Mo. 598; *Rogers*

*v. Rogers,* 87 Mo. 259; *Allen v. Logan,* 96 Mo. 601, 10 S. W. 149; *Burdett v. May,* 100 Mo. 16, 12 S. W. 1056; *Davis v. Green,* 102 Mo. 184, 14 S. W. 876, 11 L. R. A. 90; *King v. Isley,* 116 Mo. 159; *Bradley v. Bradley,* 119 Mo. 61, 24 S. W. 757; *Plumb v. Cooper,* 121 Mo. 674, 26 S. W. 678; *Logan v. Johnson,* 72 Miss. 187, 16 South. 231; *Frederick v. Haas,* 5 Nev. 389; *Dalton v. Dalton,* 14 Nev. 419; *Cutler v. Tuttle,* 19 N. J. Eq. 560; *Tunnard v. Littell,* 23 N. J. Eq. 267; *Midmer v. Midmer's Exr.,* 26 N. J. Eq. 304; *Parker v. Snyder,* 31 N. J. Eq. 169; *McKeown v. McKeown,* 33 N. J. Eq. 387; *Krauth v. Thiele,* 45 N. J. Eq. 410, 18 Atl. 351; *Barbour v. Barbour,* 51 N. J. Eq. 271, 29 Atl. 148; *Freeman v. Kelley,* Hoffm. Ch. 92; *Boyd v. McLean,* 1 Johns. Ch. 590; *Malin v. Malin,* 1 Wend. 649; *McGinty v. McGinty,* 63 Pa. St. 42; *Nixon's Appeal,* 63 Pa. St. 282; *Kistler's Appeal,* 73 Pa. St. 399; *Brickell v. Earley,* 115 Pa. St. 479, 8 Atl. 623; *Sillian v. Haas,* 151 Pa. St. 63, 25 Atl. 72; *Billings v. Clinton,* 6 S. C. 102; *McGammon v. Pettitt,* 3 Sneed (Tenn.), 246; *Hall v. Fowlkes,* 9 Heisk. (Tenn.) 753; *Holder v. Nunnelly,* 2 Cold. (Tenn.) 289; *Agricultural Assn. v. Brewster,* 51 Tex. 263; *Miller v. Blose's Exr.,* 30 Gratt. (Va.) 751; *Kane v. O'Connors,* 78 Va. 76; *Donaghe v. Tams,* 81 Va. 142; *Smith v. Patton,* 12 W. Va. 552; *Towle v. Wadsworth,* 147 Ill. 80, 30 N. E. 602; *Reeve v. Strawn,* 14 Ill. 94; *Corder v. Corder,* 124 Ill. 229, 16 N. E. 107; *Purcell v. Miner,* 4 Wall. 513; *Shaw v. Shaw,* 86 Mo. 594; *Woodward v. Siebert,* 82 Va. 441; *Buyers v. Danley,* 27 Ark. 88; *Reynolds v. Caldwell,* 80 Ala. 232; *Dudley v. Bachelder,* 53 Mo. 403; *Strong v. Messenger,* 148 Ill. 431, 36 N. E. 617.

*Rice v. Rigley* decided by this court is so materially different from this case in the facts upon which it rests, that we do not consider it decisive of the case under consideration. The rule, however, contended for by appellants was announced in that case.

The other cases announce substantially the same proposition of law. After an examination of practically all of these cases it is, to my mind, worthy of note that this doctrine arose out of an entirely different class of cases from the one under consideration. It had its origin in courts of exclusively chan-

cery jurisdiction where the bill sought reformation of a deed or other instrument under seal; or where the complainant prayed that a trust be declared in his favor in property contrary to the express terms of the deed or conveyance which vested the legal title in another. While this doctrine was being promulgated in courts of chancery, under the practice of those courts, the evidence was taken by a master in chancery and was reported to the court for its consideration and no witnesses appeared before the chancellor. The practice is now quite different—the witnesses appearing and testifying before the judge sitting as a chancellor and giving him an opportunity of seeing and hearing them as they testify and thereby enlarging his opportunity for judging of their veracity, bias, prejudice, interest, motives and opportunity for knowing and comprehending the facts about which they are testifying. Through the medium of this practice the courts of this state, as well as of other states, have held that where the witnesses appear and testify in a court of equity and there is a substantial conflict in the evidence, the appellate court will not disturb the findings and judgment of the trial court. (*Stuart v. Hauser,* 9 Idaho, 53, 72 Pac. 719; *Commercial Bank v. Lieuallen,* 5 Idaho, 47, 46 Pac. 1020; *Doe v. Vallejo,* 29 Cal. 391; *Silva v. Pickard,* 14 Utah, 254, 47 Pac. 144, and cases cited. To same effect, see *Roby v. Roby, ante,* p. 139, 77 Pac. 213; *McGinnis v. Jacobs,* 147 Ill. 30, 35 N. E. 214.)

Again, it is everywhere held that in criminal cases the jury must be satisfied of the guilt of the defendant beyond a reasonable doubt, and yet when a conviction was had it has been held that "where there is a substantial conflict in the evidence on the material issues involved, a new trial will not be granted." (*State v. Collett,* 9 Idaho, 608, 75 Pac. 271; *People v. Arthur,* 93 Cal. 536, 29 Pac. 126.)

It must therefore be presumed that, notwithstanding to how great an extent the rule announced has been applied by the courts, it has never been the purpose of any of them to carry a rule for the security of property and property rights beyond that recognized for the protection of life and liberty.

The mere statement of the principal reason assigned by the great majority of cases for the adoption, maintenance and application of the rule contended for in this case demonstrates how illogical and unreasonable it would be to assign the same reason in this class of cases. That reason is pointedly stated by the supreme court of Alabama in *Bibb v. Hunter, supra*, where the court says: "The burden of removing a presumption that the conveyance speaks the truth rests on the complainant. Appreciating the danger of having the deeds or other solemn writings displaced by parol evidence, easy of fabrication, and sometimes incapable of contradiction, the courts have generally upheld the rule that the presumption arising from the conveyance must prevail, unless overcome by evidence full, clear and satisfactory."

It seems to me that there is a clear distinction between the class of cases cited in which a trust is sought to be established and cases like the one at bar where all the record title there is was initiated and executed by the defendant and locator himself. The record title to mining claims located upon the public domain is wholly the production and instrument of the locator himself to which no other person is a party; neither is it an instrument of the solemnity and dignity of sealed instruments in any matter in which its office is invoked as a protection solely for the benefit of the locator as against any other person. Especially is this true in a case where the locator invokes the verity attaching to sealed instruments to protect him against the claim of one whose name he should have placed on that notice. It must necessarily follow that when one of the parties to the grubstake agreement asserts his right in a court of equity to an interest in a mining claim located by a party to such contract, he is not in the position of seeking to assert or establish a right which is in conflict with the express terms of a deed of conveyance or other written instrument of like dignity and solemnity. By such action he is seeking to establish a tenancy in common with the locator which does not appear by the record title, created by the locator alone, but which in fact does exist in equity and good conscience. (2 Lindley on Mines, sec. 858; *Miller v. Butterfield,* 79 Cal. 62,

21 Pac. 543.) During the early growth of the doctrine con-
tended for, no such contracts as the one under consideration
were known or recognized; and in fact the "grub'stake" agree-
ment is a production of the mining states of the west.

Appellants have quoted at length in their brief from *Chit-
tyna Exploration Company v. Fitch,* decided by Judge Wicker-
sham at Valdez, Alaska, November 28, 1903, but we have been
unable to find that case reported except as we have read it
from the "Alaska Prospector" furnished us by appellants'
counsel. Some of the things stated in that opinion *arguendo*
indicate a conclusion similar to that contended for by appel-
lant here, but the court seems to have decided the case on an-
other point and held that the property acquired by defend-
ants did not fall within the terms of the agreement of agency
and employment established by the plaintiff. It is certainly
true, as stated in that case, that the plaintiff in such cases has
the burden of proof resting on him, but that is true in all cases.
The *onus probandi* rests on the plaintiff always. (1 Green-
leaf on Evidence, sec. 74, and cases cited.) Of course we ap-
preciate the fact that a distinction must be recognized between
the *burden* of *proof* and *weight* of *evidence.*

"In a case like this the material issue is: Was the contract
alleged by the plaintiff entered into between him and defend-
ant? Here the contract alleged was in parol. Such contracts
when established are enforced by the courts where they are exe-
cuted as to the plaintiff. It is generally held that such partial
execution takes the contract out of the operation of the statute
of frauds. (*Gore v. McBrayer,* 18 Cal. 582; *Moritz v. Lavelle,*
77 Cal. 10, 11 Am. St. Rep. 229, 18 Pac. 803; *Book v. Justice
Min. Co.,* 58 Fed. 119; *Herbaur v. Reeding,* 3 Mont. 21; *Ray-
mond v. Johnson,* 17 Wash. 237, 61 Am. St. Rep. 908, 49 Pac.
492.)"

When the fact is established that the contract was entered
into and the terms and conditions thereof are shown, it will
be enforced, whether in writing or parol. It is also true that
the courts have quite generally held that in order to enforce
the specific performance of a parol contract it must be *clearly*
and *satisfactorily* shown to the trial court as to its execution

and the terms and conditions thereof. If the contract has not been reduced to writing it must of necessity require a greater weight of evidence to establish its existence, and the terms and conditions thereof, and in those respects satisfy the mind of the court, than if the contract were in writing and produced in evidence. Where, however, the record discloses such facts that a fair and reasonable person might conclude therefrom as to the execution, terms and conditions of the contract, I do not see how an appellate court is justified in saying that it did not appear *clearly* and *satisfactorily* to the trial court. Evidence entirely clear and convincing to the trial court who saw and heard the witnesses might, when in cold type upon the record, leave doubts in the minds of the members of the appellate court, but I do not think they should reverse the judgment on such grounds. The rule is one by which the trial court primarily weighs the evidence, and unless substantially departed from by him in arriving at his decision should not become one of original application on appeal.

In actions like the one at bar, where miners and prospectors must have necessarily reposed a peculiar trust and confidence in each other, it seems to me that the court should not refuse to enforce these "grubstake" agreements simply because a plaintiff cannot produce that great preponderance of evidence which reaches a moral certainty and precludes all reasonable doubt.

Applying these principles to the record before us, we would not be justified in disturbing the judgment of the trial court. An examination of the evidence produced in this case satisfies us that the contract was entered into as alleged by the plaintiff and that the defendants were endeavoring to avoid a compliance with its terms. It is true that practically all the material facts established by the plaintiff are contradicted by the defendants, but if such contracts cannot be enforced by the courts where they are denied by the defendant and his witnesses, there would be but few cases, if any, in which a decree could be entered for the plaintiff. Neither the amount of testimony nor its contradictory or corroborative nature constitute the leading or controlling elements in satisfying a court or jury as to the existence or nonexistence of the fact in issue. It is rather

the convincing character and quality of the evidence concerning the particular fact in dispute. So it was in this case.

It is urged by appellants that the plaintiff was guilty of such laches in asserting his claim and prosecuting his action that it should operate as a positive bar to his recovery. In support of this we are cited to 18 Am. & Eng. Ency of Law, 2d. ed., 100; 15 Am. & Eng. Ency. of Law, 2d ed., 1208. In the latter citation it is stated: "While the lapse of time may not be such as to constitute a bar upon the ground of laches, it may still have the effect of requiring a higher degree of proof to establish the trust." We think this authority correctly states the law on the subject. The evidence of whatever laches of which the plaintiff was guilty was before the court and was undoubtedly considered by him in arriving at his decision in the case. It was contended by the respondent, however, that he relied upon the good faith of his cotenant, or rather the one with whom he supposed he was a cotenant, to protect him and carry out the terms of the contract until about the time a sale was made of a part interest in the property when he discovered defendant's bad faith. In any event this evidence was before the court and was, we think, sufficient to justify the conclusion at which he arrived.

"It appears that prior to the commencement of this action the defendant Matthew had parted with practically all his interest in these properties, while Ellis still retained an interest in all of them. The court decreed the plaintiff a one-sixth interest in each of the properties and directed that that interest be taken out of any interest retained by Ellis where Matthew had parted with his interest and was not able to respond to the order and decree of the court. The appellants complain of this action of the court and contend that the whole interest claimed by respondent could not be taken from the holdings of either of the defendants alone. The appellants, however, seem to have overlooked the fact that the plaintiff charged the defendants Ellis and Matthew, and other parties to the defendant unknown, with fraud and conspiracy to cheat and defraud him out of his interest, and that by the ninth finding of the court as hereinbefore set out the court found for the plaintiff

upon that issue. Under this allegation of the complaint and finding of the court we have no doubt of the right of the court to enter the decree as he did. We have found no sufficient reason for a reversal of this judgment, and think the action of the trial court has been regular and his conclusion fair and just in the matter. The judgment and order appealed from will be affirmed, and it is so ordered. Costs awarded to respondent.

Sullivan, C. J., and Stockslager, J., concur.

### ON REHEARING.

(February 7, 1905.)

SULLIVAN, J.—A petition for a rehearing has been filed in this matter and carefully considered by the court. We find no new points raised in the petition that were not passed upon in the opinion in the case, and after a careful reconsideration of the matter and an examination of the authorities, we are satisfied with the conclusion reached in the original opinion. A rehearing is therefore denied.

Stockslager, C. J., and Ailshie, J., concur.